McCULLOUGH, Judge.
*271 William Andrew Jarrett ("defendant") appeals from a domestic violence order of protection entered 24 August 2015. For the reasons stated herein, we affirm in part, vacate in part, and dismiss in part.
I. Background
Catrina Rayfield Jarrett ("plaintiff") and defendant are former spouses, having been married on 25 May 1991, separated on 11 August 2010, and divorced on 7 December 2011. The parties have two children together.
On 20 July 2015, plaintiff filed a "Complaint and Motion for Domestic Violence Protective Order" against defendant. Plaintiff alleged, inter alia , that she was in fear of continued harassment that rises to such a level as to *886 inflict substantial emotional distress based on the following reasons: defendant continued to legally harass her; defendant continued to attend their children's events after being asked not to attend and after being told they were afraid of him; defendant continued to cut plaintiff off on the highway and slam on his brakes; defendant continued to videotape plaintiff driving; defendant continued to take photographs; and continued to threaten their child.
On 24 July 2015, plaintiff filed an amendment to the 20 July 2015 complaint that included additional allegations[1] .
On 6 August 2015, defendant filed a "Motion to Dismiss; Motion to Strike; Motion for Sanctions; and Affirmative Defenses and Answer." Defendant argued that, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and res judicata , plaintiff's 20 July 2015 complaint failed to state a claim because it requested "relief pursuant to claims, facts, and circumstances which were previously litigated in separate and previously-filed Catawba County District Court domestic violence actions-and in a manner adverse to Plaintiff." Defendant also moved, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(f), to strike the allegations contained in plaintiff's 20 July 2015 complaint "which have already been fully adjudicated on the merits in prior actions" and argued that *272 plaintiff's exhibits constituted hearsay which was inadmissible pursuant to Rule 802 of the North Carolina Rules of Evidence. Defendant moved pursuant to Rule 11 of the North Carolina Rules of Civil Procedure to sanction plaintiff. Finally, defendant argued the affirmative defenses of res judicata and collateral estoppel.
A hearing was held on 19 August 2015 at the civil session of Catawba County District Court, the Honorable Chester Davis ("Judge Davis") presiding. At the close of plaintiff's evidence, defendant made a motion for involuntary dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b).
On 24 August 2015, the trial court entered a "Domestic Violence Order of Protection" ("DVPO"), effective until 20 August 2016. The DVPO ordered that defendant "shall not commit any further acts of domestic violence or make any threats of domestic violence" and defendant "shall have no contact with the Petitioner/Plaintiff." The DVPO entered a finding that in mid-June 2015, defendant had "placed [plaintiff] in fear of continued harassment that rises to such a level as to inflict substantial emotional distress" by following plaintiff on a highway, pulling in front of plaintiff's vehicle, and applying defendant's brakes. The trial court found that this had occurred on three separate occasions, in March, May and mid-June of 2015 and that "[e]ach of these events caused the [plaintiff] substantial emotional distress." In addition, the trial court found that on 27 July 2015, plaintiff was admitted to a hospital with heart issues related to these events. Each of the three events was found to be "3 acts of stalking as defined- G.S. 14-277.3A was conduct with no legitimate purpose which tormented and terrified the [plaintiff]." Furthermore, the DVPO included findings that defendant "is in possession of, owns or has access to firearms, ammunition, and gun permits[,]" listed descriptions of specific firearms divided by categories entitled "sheriff to take" and "sheriff not to take," but also included a finding that defendant did not use or threaten to use a deadly weapon against plaintiff. The trial court concluded that defendant had committed acts of domestic violence against plaintiff. Accordingly, the trial court ordered as follows:
1. the defendant shall not assault, threaten, abuse, follow, harass (by telephone, visiting the home or workplace, or other means), or interfere with the plaintiff....
....
7. the defendant shall stay away from the plaintiff's residence or any place where the plaintiff receives temporary shelter....
*273 ....
11. the defendant is prohibited from purchasing a firearm for the effective period of this Order ... and the defendant's concealed handgun permit is suspended for the effective period of this Order....
12. the defendant surrender to the sheriff serving this order the firearms described [previously].
On 2 October 2015, the trial court entered an "ORDER (Re: Motion to Dismiss, Motion to Strike, and First Affirmative Defense)." The trial court entered the following findings of fact, in pertinent part:
5. On October 31, 2014, Plaintiff filed a Complaint and Motion for [DVPO] against Defendant (Catawba County File No. 14-CVD-2722). Defendant was not served with that Complaint and Motion for [DVPO].
6. On January 9, 2015, Plaintiff filed an Amended Complaint and Motion for [DVPO]. On the same day, the Court entered an Order granting Plaintiff's request for an emergency ex parte [DVPO] against Defendant.
7. On January 12, 2015, based on Plaintiff's allegation, the Court issued a Warrant for Arrest against Defendant for an alleged violation of the Ex Parte [DVPO] (Catawba County File No. 15-CR-050201).
....
9. On January 20, 2015, the Court conducted a hearing on Plaintiff's request for a one-year domestic violence protective order.
10. The Court denied Plaintiff's Amended Complaint and Motion for [DVPO] in open court on January 20, 2015, and filed a written Order to that effect on February 3, 2015 (Catawba County File No. 14-CVD-2722).
11. The February 3, 2015 Order denying Plaintiff's Amended Complaint and Motion for [DVPO] included specific findings of fact regarding all of Plaintiff's allegations of domestic violence by Defendant through and including January 11, 2015, and concluded that Plaintiff failed to prove grounds for issuance of a domestic violence protective order.
*274 12. On June 5, 2015, the Court heard the criminal matter regarding Defendant's alleged violation of the Ex Parte [DVPO]. That same day, the Court dismissed all charges against Defendant and concluded that he had not violated any valid domestic violence protective order.
13. On July 20, 2015, Plaintiff filed a new Complaint and Motion for [DVPO], alleging certain acts identical to those dismissed by the February 3, 2015 Order.
14. All allegations of facts and instances of domestic violence occurring on or before January 11, 2015 have been fully litigated and adjudicated on the merits in a manner adverse to Plaintiff.
*887 15. Allegations of facts and instances of domestic violence occurring after January 11, 2015 have not been litigated or adjudicated in a court of law.
The trial court then entered the following conclusions of law, in pertinent part:
2. As all allegations of facts and instances of domestic violence occurring on or before January 11, 2015 have been fully litigated and adjudicated on the merits in a manner adverse to Plaintiff, Plaintiff is barred from re-litigating those issues under the doctrines of res judicata and collateral estoppel.
3. Plaintiff's allegations of facts and instances of domestic violence occurring after January 11, 2015 have not been litigated or adjudicated, and are not barred by the doctrines of res judicata and collateral estoppel.
4. Defendant's Motion to Strike pursuant to Rule 12(f) of the North Carolina Rules of Civil Procedure should be granted as more particularly ordered herein.
5. Accordingly, Defendant's Affirmative Defenses of Res Judicata and Collateral Estoppel should also be granted as to all allegations of domestic violence that occurred on or before January 11, 2015.
6. Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure should be denied.
The trial court reserved ruling on defendant's motion for sanctions.
*275 Defendant appeals.
II. Discussion
On appeal, defendant argues that the trial court erred (A) by concluding that defendant committed domestic violence against plaintiff; (B) by finding that defendant stalked plaintiff; and (C) by denying defendant's motion for involuntary dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b).
A. Domestic Violence
Defendant argues that the trial court erred by concluding that he had committed acts of domestic violence against plaintiff.
When the trial court sits without a jury [regarding a DVPO], the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal.
Hensey v. Hennessy , 201 N.C.App. 56, 59, 685 S.E.2d 541, 544 (2009) (citation omitted). Our Court has recognized that
the trial judge is present for the full sensual effect of the spoken word, with the nuances of meaning revealed in pitch, mimicry and gestures, appearances and postures, shrillness and stridency, calmness and composure, all of which add to or detract from the force of spoken words. The trial court's findings turn in large part on the credibility of the witnesses, [and] must be given great deference by this Court.
Brandon v. Brandon , 132 N.C.App. 646, 651-52, 513 S.E.2d 589, 593 (1999) (internal citations and quotation marks omitted).
N.C. Gen. Stat. § 50B-1 defines "domestic violence" as follows:
(a) Domestic violence means the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
*276 (1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
(2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or
(3) Committing any act defined in G.S. 14-27.21 through G.S. 14-27.33.
N.C. Gen. Stat. § 50B-1 (2015).
Here, in support of its conclusion that defendant committed acts of domestic violence against plaintiff, the trial court found as follows, in pertinent part: defendant had "placed [plaintiff] in fear of continued harassment that rises to such a level as to inflict *888 substantial emotional distress" by following plaintiff on a highway, pulling in front of plaintiff's vehicle, and applying defendant's brakes; these incidents had occurred on three separate occasions, on 31 March 2015, May 2015 and mid-June of 2015 and that "[e]ach of these events caused the [plaintiff] substantial emotional distress;" and, that on 27 July 2015, plaintiff was admitted to a hospital with heart issues related to these events. The DVPO also included findings that defendant "is in possession of, owns or has access to firearms, ammunition, and gun permits[,]" listed descriptions of specific firearms divided by categories entitled "sheriff to take" and "sheriff not to take," and found that defendant did not use or threaten to use a deadly weapon against plaintiff.
Evidentiary Rulings
First, defendant contends that the trial court made several erroneous evidentiary rulings during the 19 August 2015 hearing. We address each argument in turn.
Defendant argues that plaintiff should not have been allowed to testify about events not alleged in her 20 July 2015 complaint. Defendant contends that plaintiff's complaint only alleged that he followed her on the highway, cut her off, and slammed on his brakes in May 2015 and failed to allege that similar incidents occurred in March or June of 2015.
Our Court has held that:
Under G.S. 1A-1, Rule 8(a), detailed fact-pleading is not required. A pleading complies with the rule if it gives sufficient notice of the events or transactions which produced *277 the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and-by using the rules provided for obtaining pretrial discovery-to get any additional information he may need to prepare for trial.
Lewis v. Gastonia Air Service, Inc. , 16 N.C.App. 317, 318, 192 S.E.2d 6, 7 (1972) (citations and quotation marks omitted).
In light of these principles, we find that plaintiff's 20 July 2015 complaint gave defendant sufficient notice of the nature and basis of her claim. Plaintiff sought a DVPO based on allegations that defendant had placed her "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress[.]" Plaintiff's complaint provided that in May 2015, defendant had continued to cut her off on the highway and slam on his brakes and in an amendment to her complaint, filed 24 July 2015, plaintiff alleged that defendant had followed her on the highway in March and June 2015. Although the amendment was not served on defendant but was first presented to him at the 19 August 2015 hearing, defendant does not argue that he was unable to prepare a responsive pleading or that he was unable to prepare for the hearing. Rather, at the hearing, defendant unequivocally denied that he had followed plaintiff on the highway since January 2015. Based on the foregoing, we reject defendant's argument.
Next, defendant argues that the trial court erred by admitting the following testimony against his objections: plaintiff's testimony regarding the contents of a piece of paper purporting to move their younger child's bus stop away from her home; plaintiff's testimony that her younger child told her that he enjoyed riding the bus with his friends; plaintiff's testimony regarding the contents of mail that plaintiff claims proves defendant changed her address to prevent her from receiving mail; plaintiff's testimony about the contents of a paper purportedly showing that she was diagnosed with heart palpitations; a witness's testimony that the younger child told the witness that he "did not want to attend matches because he was afraid he would see his father and be reminded what had happened to his family[;]" plaintiff's question to a witness about whether the younger child ever told the witness "since January of this year that there is a problem with the Defendant who is sitting at the end of the table[;]" the younger child's testimony that he wrote a letter regarding defendant's "abuse [of] the court system to bully me and my family[;]" and plaintiff's question to a witness whether plaintiff had told the witness why she "was crying" after the witness testified that plaintiff was "crying and the whole family was broken, but *278 you were trying to spend some time together. Something major *889 happened." Defendant asserts that the aforementioned testimony amounted to hearsay.
"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay evidence is generally inadmissible unless it falls within one of the exceptions recognized in the North Carolina Rules of Evidence or another statute.
Little v. Little , 226 N.C.App. 499, 502, 739 S.E.2d 876, 879 (2013) (citing N.C. Gen. Stat. § 8C-1, Rules 801(c) and 802 ). However, it is well established that "an appellant alleging improper admission of evidence has the burden of showing that it was unfairly prejudiced ..., that appellant has been denied some substantial right and that the result of the [hearing] would have been materially more favorable to appellant." McNabb v. Bryson City , 82 N.C.App. 385, 389, 346 S.E.2d 285, 288 (1986).
Assuming arguendo that the challenged testimony amounted to inadmissible hearsay, we are unable to see any prejudice in its admission. The trial court did not rely on this challenged testimony in making its findings of fact and conclusion of law that defendant committed domestic violence against plaintiff. Rather, the trial court based its conclusion on findings that defendant placed plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress by following her on a highway, pulling in front of her, and applying his brakes on three separate occasions.
Defendant also argues that the trial court erred by allowing plaintiff and her witnesses, over objections, to testify about matters of which they had no personal knowledge. Specifically, defendant directs our attention to the following evidence: plaintiff's testimony about an occasion where one of her sons was served while at school; plaintiff's testimony that defendant had stopped driving an orange Jeep since the January court proceedings; and the older son's testimony that plaintiff received letters and "other legal harassment."
Pursuant to N.C. Gen. Stat. § 8C-1, Rule 602 (2015), "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." However, even assuming arguendo that the trial court erred by allowing this testimony, defendant must still meet the burden of showing he was prejudiced by its admission. Here, defendant has failed to demonstrate that he was prejudiced by the admission of the challenged testimony, as the challenged testimony did not form the basis of the trial court's DVPO.
*279 Next, defendant argues that the trial court improperly overruled numerous objections by defendant's counsel based on relevancy. Defendant contends that the following evidence should not have been admitted: a witness's testimony regarding whether he believed that the children had experienced substantial emotional distress; plaintiff's testimony that defendant filed a request to move the younger child's bus stop from her home; plaintiff testified that she asked defendant to return two dirt bikes; plaintiff asked a witness about the children's character; plaintiff asked a witness when the last time was that the older child was called to the office for discipline and whether there had been a discipline problem since January of 2015 and since his graduation; testimony regarding a search for tracking devices on plaintiff's car; testimony of plaintiff's witness regarding whether she saw her or her children in distress; plaintiff's testimony that she had taken a special course in child abuse; and the younger child's testimony regarding the amount of money he withdrew from his account to bail plaintiff out of jail for contempt.
"The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated." State v. Jones , --- N.C.App.----, ----, 772 S.E.2d 470, 475 (2015) (citation omitted). Again, assuming arguendo that the foregoing evidence was irrelevant, any error was harmless because defendant is unable to show that a different result would have been reached at trial. Accordingly, we overrule defendant's arguments.
*890 Findings of Fact
Next, defendant contends that the evidence presented at the DVPO hearing was insufficient to support the trial court's findings of fact regarding the three separate incidents where defendant followed plaintiff on the highway. Defendant seems to argue that because he completely denied following plaintiff's vehicle on the highway after 11 January 2015 and because plaintiff presented conflicting evidence regarding these incidents on the highway, the trial court's findings of fact are not supported by competent evidence. Defendant also challenges the trial court's finding that plaintiff was "placed in fear of continued harassment that rises to such a level as to inflict substantial emotional distress." Defendant's arguments have no merit.
Plaintiff's testimony at the DVPO hearing tended to show that in March, May, and June of 2015, defendant would follow her vehicle on the highway, pull in front of her vehicle, and slam on his brakes. Plaintiff would have "to veer out of my lane to avoid an accident." Plaintiff's older *280 son testified that he observed plaintiff "in distress" following these incidents on the highway. Further, plaintiff testified that in July of 2015, she received emergency medical treatment at Frye Regional Hospital "for a flurry of heart palpitations." Her emotional distress resulted from receiving information that defendant had petitioned to recover his weapons and ammunition that had been seized under an earlier court order.
On the other hand, defendant testified as follows at the DVPO hearing:
Q. Have you followed a vehicle driven by [plaintiff] since January 11, 2015?
[Defendant:] Absolutely not.
Based on this divergence, the trial court was placed in a position to judge the credibility of the witnesses. The trial court stated that:
The Defendant has specifically denied that these events occurred. His words, as I recall, were-just bear with me for a second-all right, he was emphatic, when asked if he had followed his wife since January, he said absolutely not. He was not equivocal. That was an absolute no. Therefore, the Court is put in a position of deciding bluntly who to believe. Considering the totality of the evidence in this case, the Court decides and believes that the testimony reduced to its lowest level of the Plaintiff and one of her children is accurate.
As we have previously stated, the trial court is in the best position to judge the credibility of the witness testimony and our Court must give great deference to the trial court's determinations. In light of the testimony admitted during the DVPO hearing regarding defendant's conduct, we conclude that competent evidence supported the trial court's findings of fact.
Conclusion of Law
Next, defendant argues that the findings of fact do not support the conclusion of law that he committed domestic violence. We disagree.
"[T]he plain language of [N.C.G.S. §] 50B-1(a)(2) imposes only a subjective test, rather than an object reasonableness test, to determine whether an act of domestic violence has occurred." Thomas v. Williams , --- N.C.App. ----, ----, 773 S.E.2d 900, 905 (2015) (citation omitted). "Domestic violence" means the
*281 commission of one or more of the following acts upon an aggrieved party ... by a person with whom the aggrieved party has or has had a personal relationship ... Placing the aggrieved party ... in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress[.]
N.C. Gen. Stat. § 50B-1(a) (2015). "Harassment" is defined as "[k]nowing conduct ... directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C. Gen. Stat. § 14-277.3A(b)(2) (2015). "Substantial emotional distress" is defined as "[s]ignificant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." N.C. Gen. Stat. § 14-277.3A (b)(4).
The trial court found that on at least three separate occasions, defendant had followed *891 plaintiff on the highway, pulled in front of her vehicle, and slammed on his brakes. The trial court further found that each incident caused plaintiff such "substantial emotional distress," that in July 2015, plaintiff was admitted to a hospital with heart issues related to these incidents. These findings support the trial court's ultimate conclusion that defendant committed acts of domestic violence against plaintiff.
Surrender of Weapons
Defendant asserts that the findings of fact and conclusion of law do not support the trial court's legal decree.
Here, defendant challenges the portions of the DVPO ordering that defendant: (1) "shall not assault, threaten, abuse, follow, harass ..., or interfere with plaintiff[;]" (2) "stay away from the plaintiff's residence[;]" (3) surrender certain firearms; (4) have his concealed handgun permit suspended for the effective period of the DVPO; and (5) be prohibited from purchasing a firearm for the effective period of the DVPO.
Pursuant to N.C. Gen. Stat. § 50B-3,
(a) If the court ... finds that an act of domestic violence has occurred, the court shall grant a protective order restraining the defendant from further acts of domestic violence. A protective order may include any of the following types of relief:
....
*282 (9) Order a party to refrain from doing any or all of the following:
a. Threatening, abusing, or following the other party.
b. Harassing the other party, including by telephone, visiting the home or workplace, or other means....
c. Otherwise interfering with the other party.
....
(11) Prohibit a party from purchasing a firearm for a time fixed in the order.
....
(13) Include any additional prohibitions or requirements the court deems necessary to protect any party or any minor child.
N.C. Gen. Stat. § 50B-3 (2015).
Because we have upheld the trial court's conclusion that defendant committed domestic violence against plaintiff, we also hold that the trial court properly ordered that defendant not assault, threaten, abuse, follow, harass, or interfere with plaintiff, that defendant be prohibited from purchasing a firearm for the duration of the DVPO, and that defendant stay away from plaintiff's residence pursuant to N.C. Gen. Stat. § 50B-3.
However, we vacate the portion of the DVPO ordering that defendant surrender certain firearms and ammunition and have his concealed handgun carrying permit suspended for the duration of the DVPO. Under N.C. Gen. Stat. § 50B-3.1, the trial court
shall order the defendant to surrender to the sheriff all firearms, machine guns, ammunition, permits to purchase firearms, and permits to carry concealed firearms that are in the care, custody, possession, ownership, or control of the defendant if the court finds any of the following factors:
(1) The use or threatened use of a deadly weapon by the defendant or a pattern of prior conduct involving the use or threatened use of violence with a firearm against persons.
(2) Threats to seriously injure or kill the aggrieved party or minor child by the defendant.
*283 (3) Threats to commit suicide by the defendant.
(4) Serious injuries inflicted upon the aggrieved party or minor child by the defendant.
N.C. Gen. Stat. § 50B-3.1(a) (2015). In the present case, the trial court found that defendant had not used or threatened to use a deadly weapon against plaintiff nor the minor children and failed to check any of the boxes on the form that contained the statutory findings necessary to order the surrender of firearms or suspension of a permit. Consequently, we hold that the trial court erred by ordering defendant to surrender specific firearms and by suspending his concealed handgun *892 permit for the duration of the DVPO, and we vacate those portions of the DVPO. See Stancill v. Stancill , --- N.C.App. ----, ----, 773 S.E.2d 890, 900 (2015) (holding that the trial court erred by failing "to check any of the boxes on the form that contained the statutory findings necessary to order the surrender of firearms" under N.C. Gen. Stat. § 50B-3.1(a) ).
B. Stalking
In his second issue on appeal, defendant asserts that the trial court erred by finding that defendant stalked plaintiff as defined in N.C. Gen. Stat. § 14-277.3A. Specifically, defendant contends that there was no competent evidence that he committed the three acts of stalking as found by the trial court. We find defendant's argument meritless.
N.C. Gen. Stat. § 14-277.3A(c), entitled "Stalking," provides as follows:
(c) Offense.-A defendant is guilty of stalking if the defendant willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following: (1) Fear for the person's safety or the safety of the person's immediate family or close personal associates. (2) Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.
N.C. Gen. Stat. § 14-277.3A(c) (2015).
Testimony at the DVPO hearing from plaintiff and plaintiff's older son supported the finding that on at least three occasions after January *284 2015, defendant followed plaintiff's vehicle on the highway, pulled in front of her, and slammed on his brakes, causing plaintiff to suddenly veer in order to avoid an accident. Plaintiff also testified that she suffered heart issues that required medical attention due to defendant's conduct on the highway. This testimony supports the trial court's finding that "Each event ... are 3 acts of stalking as defined-[N.C. Gen. Stat. §] 14-277.3A [and] was conduct with no legitimate purpose which tormented and terrified the [plaintiff]." After carefully reviewing the evidence, we conclude that the trial court did properly find that defendant stalked plaintiff.
C. Rule 41(b) of the North Carolina Rules of Civil Procedure
In his last argument on appeal, defendant maintains that the trial court erred by denying his motion for involuntary dismissal pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure, made at the conclusion of plaintiff's evidence presented at the 19 August 2015 hearing.
N.C. Gen. Stat. § 1A-1, Rule 41(b) provides:
(b) Involuntary dismissal; effect thereof .-For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim therein against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.
N.C. Gen. Stat. § 1A-1, Rule 41(b) (2015).
Plaintiff directs our attention to Hamilton v. Hamilton , 93 N.C.App. 639, 379 S.E.2d 93 (1989) and we find that the holding in that case controls the outcome here. In Hamilton , the plaintiff made a motion for an involuntary dismissal at the conclusion of the defendant's evidence. Id. at 642, 379 S.E.2d at 94. Our Court held that because "the plaintiff presented evidence after his motion to dismiss was denied, he has waived any right to appeal from the denial of that motion." Id. Accordingly, we hold that because defendant presented evidence after his motion for involuntary dismissal was denied, he has waived *893 his right to appeal from the denial of the motion. *285 D. Trial Court Judge's Remarks
We are compelled to comment on the conduct and statements of the presiding judge in this case, the Honorable Chester Davis. During the DVPO hearing, Judge Davis stated as follows:
THE COURT: Because I need to state my admiration for the Court of Appeals, but I've never felt compelled to follow them when I think they're wrong, which is frequently....
....
THE CLERK: Do you want me to leave the recording on, Judge?
THE COURT: Not if you want to. Because if you turn it off, I can talk about the Court of Appeals. Okay....
We find Judge Davis' commentary particularly troubling. His negative comments about our Court are patently inappropriate considering his judicial office and reflect a misunderstanding of this Court's authority. We strongly caution Judge Davis from making any future comments that undermine the integrity of our Court.
AFFIRMED IN PART; VACATED IN PART; DISMISSED IN PART.
Judges STEPHENS and ZACHARY concur.

This amendment was not served on defendant prior to the hearing held on 19 August 2015. Rather, it was served at the hearing and defendant did not request a continuance.