IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-465-2

 Filed: 16 July 2019

Wake County, No. 17 CVD 600980

ERIN LYNN MARTIN, Plaintiff,

 v.

SHAWN MICHAEL MARTIN, Defendant.

 Appeal by defendant from orders entered 12 September 2017 by Judge

Margaret P. Eagles in Wake County District Court. Heard in the Court of Appeals

31 October 2018. Petition for Rehearing allowed 8 February 2019. The following

opinion supersedes and replaces the prior opinion filed 18 December 2018.

 Gailor Hunt Jenkins Davis Taylor & Gibbs, PLLC, by Jonathan S. Melton and
 Stephanie J. Gibbs, for plaintiff-appellee.

 Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Alicia J. Jurney
 and Kristin H. Ruth, for defendant-appellant.

 ZACHARY, Judge.

 Shawn Michael Martin (“Defendant-Husband”) appeals from a Domestic

Violence Order of Protection and an Amended Domestic Violence Order of Protection.

For the reasons stated herein, we reverse the orders entered against Defendant-

Husband.

 I. Background
 MARTIN V. MARTIN

 Opinion of the Court

 Erin Lynn Martin (“Plaintiff-Wife”) and Defendant-Husband are the parents

of two minor children. The family moved to North Carolina from the State of

Washington on 29 May 2017.

 About a month later, on 3 July 2017, Plaintiff-Wife filed a Complaint and

Motion for Domestic Violence Protective Order alleging that Defendant-Husband

committed acts of domestic violence against Plaintiff-Wife and their children. That

same day, the trial court entered an Ex Parte Domestic Violence Order of Protection.

Defendant-Husband filed an answer on 23 August 2017 denying all allegations of

domestic violence.

 Plaintiff-Wife’s motion was heard on 12 September 2017 before the Honorable

Margaret P. Eagles in Wake County District Court. Following the hearing, the trial

court entered a Domestic Violence Order of Protection against Defendant-Husband.

Shortly thereafter, the parties came to an agreement concerning custody of the

children, and the trial court entered an Amended Domestic Violence Order of

Protection. The trial court granted temporary legal and physical custody of the

children to Plaintiff-Wife and visitation privileges to Defendant-Husband.

Defendant-Husband timely appealed two days later, on 14 September 2017.

 At the time of the hearing, dual custody proceedings were pending in

Washington and in North Carolina. The Washington custody proceeding was

scheduled for 21 September 2017, nine days after the domestic violence protective

 -2-
 MARTIN V. MARTIN

 Opinion of the Court

orders were filed. On 17 April 2018, the trial court entered a consent order settling

the record on appeal, but no information concerning subsequent custody proceedings

in either state was included in the record.

 In his brief to this Court, Defendant-Husband asserted that we have “never

addressed whether a plaintiff seeking a protective order may present evidence of

specific acts not raised in any court filing prior to trial,” allegations of which the

defendant received no notice. Plaintiff-Wife did not dispute Defendant-Husband’s

assertion that this case presented an issue of first impression, but argued that

Defendant-Husband’s due process rights were not violated by any alleged lack of

notice.

 This Court issued its opinion in this case on 18 December 2018, concluding that

the trial court violated Defendant-Husband’s due process rights “by allowing

Plaintiff-Wife to present evidence of alleged acts of domestic violence not specifically

pleaded in her Complaint.” Martin v. Martin, ___ N.C. App. ___, ___, 822 S.E.2d 756,

758 (2018) (“Martin I”). Accordingly, we reversed the domestic violence protective

orders entered against Defendant-Husband and remanded this matter to the trial

court for further proceedings. Id. at ___, 822 S.E.2d at 762. After the mandate issued,

but within the time allowed by N.C.R. App. P. 31, Plaintiff-Wife filed a petition for

rehearing, requesting that the Court reconsider its ruling in light of Jarrett v. Jarrett,

249 N.C. App. 269, 790 S.E.2d 883, disc. review denied, 369 N.C. 194, 793 S.E.2d 259

 -3-
 MARTIN V. MARTIN

 Opinion of the Court

(2016), in which this Court addressed the sufficiency of notice of domestic violence

allegations.1 We allowed Plaintiff-Wife’s petition for rehearing on 8 February 2019.

This opinion replaces and supersedes Martin I; therefore, we will reconsider the

issues raised in the parties’ briefs.

 II. Discussion

 Defendant-Husband argues that the trial court erred by: (1) allowing Plaintiff-

Wife to present evidence of alleged incidents of domestic violence of which Defendant-

Husband did not receive notice before trial, in violation of his due process rights; (2)

“entering a domestic violence protective order against Defendant[-Husband] without

concluding as a matter of law that an act of domestic violence had occurred”; and (3)

entering a child custody order when the trial court lacked subject matter jurisdiction

to do so.

 A. Unpleaded Allegations of Domestic Violence

 Defendant-Husband first argues on appeal that the trial court erred by

admitting testimony supporting allegations of domestic violence not pleaded in

Plaintiff-Wife’s complaint, and that the admission of that testimony violated his due

process rights.

 “[A]ppellate courts must avoid constitutional questions, even if properly

presented, where a case may be resolved on other grounds.” James v. Bartlett, 359

 1 Neither party cited Jarrett in their briefs to this Court.

 -4-
 MARTIN V. MARTIN

 Opinion of the Court

N.C. 260, 266, 607 S.E.2d 638, 642 (quotation marks omitted), reconsideration denied,

359 N.C. 633, 613 S.E.2d 691 (2005). The question of whether a trial court can

properly admit evidence in support of unpleaded allegations of domestic violence may

be answered by reference to our Rules of Civil Procedure.

 North Carolina remains a notice-pleading state, which means that a pleading

filed in this state must contain “[a] short and plain statement of the claim sufficiently

particular to give the court and the parties notice of the transactions, occurrences, or

series of transactions or occurrences, intended to be proved showing that the pleader

is entitled to relief.” N.C. Gen. Stat. § 1A-1, Rule 8(a)(1) (2017). “A complaint is

adequate, under notice pleading, if it gives a defendant sufficient notice of the nature

and basis of the plaintiff’s claim and allows the defendant to answer and prepare for

trial.” Burgess v. Busby, 142 N.C. App. 393, 399, 544 S.E.2d 4, 7, disc. review

improvidently allowed, 354 N.C. 351, 553 S.E.2d 679 (2001). While Rule 8 “does not

require detailed fact pleading, . . . it does require a certain degree of specificity . . . [,

and] sufficient detail must be given so that the defendant and the Court can obtain a

fair idea of what the plaintiff is complaining, and can see that there is some basis for

[relief].” Manning v. Manning, 20 N.C. App. 149, 154, 201 S.E.2d 46, 50 (1973).

 This Court has previously recognized that the entry of a domestic violence

protective order “involves both legal and non-legal collateral consequences.” Mannise

v. Harrell, 249 N.C. App. 322, 332, 791 S.E.2d 653, 660 (2016). For instance, “[a]

 -5-
 MARTIN V. MARTIN

 Opinion of the Court

domestic violence protective order may . . . place restrictions on where a defendant

may or may not be located, or what personal property a defendant may possess or

use.” Id. Additionally, the existence of a prior domestic violence protective order may

be “consider[ed] . . . by the trial court in any custody action involving [the]

[d]efendant.” Smith v. Smith, 145 N.C. App. 434, 436, 549 S.E.2d 912, 914 (2001).

 The defendant may also suffer “non-legal collateral consequences” as a result

of “the stigma that is likely to attach to a person judicially determined to have

committed domestic abuse.” Id. at 437, 549 S.E.2d at 914 (brackets and quotation

marks omitted). For example, this Court has recognized that “a person applying for

a job, a professional license, a government position, admission to an academic

institution, or the like, may be asked about whether he or she has been the subject of

a domestic violence protective order.” Id. (brackets omitted). Because of the potential

significant and lasting adverse collateral consequences faced by those against whom

a domestic violence protective order is entered, it is imperative that a defendant

receive adequate notice of the allegations in the complaint.

 A trial court does not err by admitting evidence in support of unpleaded

domestic violence allegations, so long as the allegations in the complaint provide

sufficient notice of the nature and basis of any unpleaded allegations. See Jarrett,

249 N.C. App. at 276-77, 790 S.E.2d at 888. For instance, in Jarrett, the plaintiff filed

a complaint on 20 July 2015 alleging domestic violence and claiming that in May

 -6-
 MARTIN V. MARTIN

 Opinion of the Court

2015, the defendant “followed [the plaintiff] on the highway, cut her off, and slammed

on his brakes.” Id. at 276, 790 S.E.2d at 888. The defendant had also committed

similar incidents of aggressive driving in March and June of 2015; however, the

plaintiff’s complaint only alleged the May 2015 incident. Id. The plaintiff did file an

amended complaint on 24 July 2015 alleging the March and June incidents, but did

not serve the defendant with the amended complaint until the day of the hearing. Id.

at 277, 790 S.E.2d at 888. At the hearing, the plaintiff testified about all three

incidents of aggressive driving. Id. at 276, 790 S.E.2d at 888. The defendant argued

to this Court that the trial court should not have permitted the plaintiff to testify

about alleged incidents of domestic violence not pleaded in her original complaint.

Id. However, applying Rule 8, this Court concluded that the “plaintiff’s 20 July 2015

complaint gave [the] defendant sufficient notice of the nature and basis of her claim.”

Id. at 277, 790 S.E.2d at 888. Indeed, the defendant did “not argue that he was unable

to prepare a responsive pleading or that he was unable to prepare for the hearing.”

Id. Thus, the plaintiff’s allegation of one incident of aggressive driving in July 2015

provided the defendant with sufficient notice of the plaintiff’s unpleaded allegations

arising from similar incidents in March and June 2015, as his aggressive driving was

the nature and basis of the plaintiff’s complaint.

 In this case, the trial court found, in both of its domestic violence protective

orders, that Defendant-Husband placed Plaintiff-Wife in fear of imminent bodily

 -7-
 MARTIN V. MARTIN

 Opinion of the Court

injury and continued harassment that rose to such a level as to inflict substantial

emotional distress. Specifically, the trial court found that

 defendant was listening to plaintiff outside her bedroom
 door, then after plaintiff locked the door, defendant
 repeatedly pounded on the door and broke into plaintiff’s
 bedroom, causing her fear of physical assault; on 6/30/2017,
 defendant threw keys at plaintiff and yelled profanity at
 her; defendant has a “flashpoint” temper (per testimony)
 and engages in excessively aggressive driving while
 plaintiff and children are in the car, causing plaintiff fear;
 plaintiff was afraid of defendant and what he might do;
 since the filing of DVPO, defendant has hacked into
 plaintiff’s email account, which has caused her emotional
 distress[.]

 Based on our review of the record, the trial court heard testimony of a

significant number of unpleaded allegations of domestic violence; however, the trial

court only made findings about three of those unpleaded allegations in concluding

that Defendant-Husband committed domestic violence. Those unpleaded allegations

include: (1) “defendant . . . engages in excessively aggressive driving while plaintiff

and children are in the car, causing plaintiff fear”; (2) “defendant was listening to

plaintiff outside her bedroom door, then after plaintiff locked the door, defendant

repeatedly pounded on the door and broke into plaintiff’s bedroom, causing her fear

of physical assault”; and (3) “defendant has hacked into plaintiff’s email account,

which has caused her emotional distress.”

 It is well established that “[i]n order to preserve an issue for appellate review,

a party must have presented to the trial court a timely request, objection, or motion,

 -8-
 MARTIN V. MARTIN

 Opinion of the Court

stating the specific grounds for the ruling the party desired the court to make if the

specific grounds were not apparent from the context.” N.C.R. App. P. 10(a)(1). Of the

unpleaded allegations of domestic violence, Defendant-Husband only objected to the

testimony concerning aggressive driving:

 [Plaintiff’s Counsel:] Now, [Defense Counsel] asked you
 about whether [Defendant-Husband] had physically
 harmed you. Did he ever put you and the children in
 harm’s way?

 [Plaintiff-Wife:] Yes.

 Q. When?

 A. [Defendant-Husband] had a lot of road rage, a lot of road
 rage, and we basically couldn’t drive to the store without
 him racing somebody or cutting somebody off.

 [Defense Counsel:] I’m going to object to that. That’s way
 outside. There’s nothing within the scope of the domestic
 violence—what she filed.

 [Plaintiff’s Counsel:] It’s within the scope of her
 questioning. I’m cross-examining her.

 [Defense Counsel:] (Interjecting) She said he had never
 done anything but touched her one time.

 [Plaintiff’s Counsel:] You know, Your Honor, I’m just trying
 to talk here.

 THE COURT: I know. I’m going to allow the question. Go
 ahead.

 Because defense counsel objected to this testimony, and because the trial court

used this unpleaded allegation of domestic violence as a basis for its decision to grant

 -9-
 MARTIN V. MARTIN

 Opinion of the Court

the protective order, we must determine, pursuant to Jarrett, whether Plaintiff-Wife’s

complaint provided Defendant-Husband with notice of the nature and basis of the

unpleaded allegations of aggressive driving. Id.

 Plaintiff-Wife’s complaint made no mention of Defendant-Husband’s driving

tendencies, and none of the allegations in the complaint provided Defendant-

Husband with notice that his driving would be an issue at the hearing. Accordingly,

the trial court erred in admitting this testimony and finding this ground as a basis

for its conclusion that Defendant-Husband committed domestic violence.

 Having so concluded, we disregard the erroneous finding concerning aggressive

driving in conducting the remainder of our review.

 B. Findings of Fact

 Defendant-Husband next challenges certain findings of fact in the trial court’s

domestic violence protective orders.

 When reviewing a domestic violence protective order, our task is to determine

“whether there was competent evidence to support the trial court’s findings of fact

and whether its conclusions of law were proper in light of such facts. Where there is

competent evidence to support the trial court’s findings of fact, those findings are

binding on appeal.” Burress v. Burress, 195 N.C. App. 447, 449-50, 672 S.E.2d 732,

734 (2009) (citation omitted). “Competent evidence is evidence that a reasonable

mind might accept as adequate to support the finding.” Ward v. Ward, 252 N.C. App.

 - 10 -
 MARTIN V. MARTIN

 Opinion of the Court

253, 256, 797 S.E.2d 525, 528 (quotation marks omitted), appeal dismissed and disc.

review denied, 369 N.C. 753, 800 S.E.2d 65 (2017). “In a non-jury trial, where there

are sufficient findings of fact based on competent evidence to support the trial court’s

conclusions of law, the judgment will not be disturbed because of other erroneous

findings which do not affect the conclusions.” Clark v. Dyer, 236 N.C. App. 9, 24, 762

S.E.2d 838, 846 (2014), cert. denied, 368 N.C. 424, 778 S.E.2d 279 (2015).

 Our General Statutes define “domestic violence” as

 the commission of one or more of the following acts upon
 an aggrieved party or upon a minor child residing with or
 in the custody of the aggrieved party by a person with
 whom the aggrieved party has or has had a personal
 relationship, but does not include acts of self-defense:

 (1) Attempting to cause bodily injury, or
 intentionally causing bodily injury; or

 (2) Placing the aggrieved party or a member of the
 aggrieved party’s family or household in fear of
 imminent serious bodily injury or continued
 harassment, as defined in G.S. 14-277.3A, that rises
 to such a level as to inflict substantial emotional
 distress; or

 (3) Committing any act defined in G.S. 14-27.21
 through G.S. 14-27.33.

N.C. Gen. Stat. § 50B-1(a).

 Any individual in a qualifying personal relationship who resides in North

Carolina may seek relief under Chapter 50B “by filing a civil action or by filing a

motion in any existing action filed under Chapter 50 of the General Statutes alleging

 - 11 -
 MARTIN V. MARTIN

 Opinion of the Court

acts of domestic violence against himself or herself or a minor child who resides with

or is in the custody of such person.” Id. § 50B-2(a). If the trial court “finds that an

act of domestic violence has occurred, the court shall grant a protective order

restraining the defendant from further acts of domestic violence.” Id. § 50B-3(a).

 1. Unsupported Findings of Fact

 Defendant-Husband challenges the evidentiary support for the trial court’s

finding that “defendant was listening to plaintiff outside her bedroom door, then after

plaintiff locked the door, defendant repeatedly pounded on the door and broke into

plaintiff’s bedroom, causing her fear of physical assault[.]” (Emphasis added).

 At the hearing, Plaintiff-Wife testified:

 That evening, June 16th, I was in bed texting,
 looking at things on my phone.

 He had chosen to start sleeping out on the couch.

 I heard a noise out in the hallway, and I actually
 came out in the hallway, and [Defendant-Husband] was
 standing there, and it just gave me that really eerie feeling.
 He was like spying on me.

 So I locked the bedroom door.

 He didn’t like that, or he wanted to come back in, so
 he started pounding on the door, and I said, “I don’t want
 you in here.”

 He got a little key, unlocked the bedroom door,
 because the previous people that lived there had the little
 sticks to unlock the door.

 - 12 -
 MARTIN V. MARTIN

 Opinion of the Court

 He came in and said he needed to get his phone
 charger, but I grabbed my purse. I didn’t know what he
 was going to do.

 I didn’t know if he was going to hit me. I didn’t know
 if he was going to take my purse. I didn’t know what to
 expect.

 Plaintiff-Wife’s testimony that Defendant-Husband used a key to unlock the

bedroom door, after which he retrieved his phone charger and left, does not support

the trial court’s finding that Defendant-Husband “broke into plaintiff’s bedroom.”

Accordingly, this finding is not supported by competent evidence.

 Defendant-Husband further argues that the trial court’s finding that he threw

keys at Plaintiff-Wife is unsupported by competent evidence. In her complaint,

Plaintiff-Wife alleged that on one occasion, Defendant-Husband “[t]hrew the keys

down and told [her] to ‘F[***]ing put the key on the ring.’ ” At the hearing, Plaintiff-

Wife testified:

 I was packing in the bedroom, and I was about a foot
 or two away from the bed. He was holding our
 daughter . . . in his arms, and he came in the bedroom and
 he took the key and the keyring, and he slammed it on the
 bed, Your Honor.

 Those keys actually slid across the bed.

 And he said to me, “Put the key back on the f[***]ing
 ring,” and he had our daughter in his arms, and he went
 out the bedroom door and slammed it and went outside
 with her.

 - 13 -
 MARTIN V. MARTIN

 Opinion of the Court

 Plaintiff-Wife further testified that she was “five feet away” from Defendant-

Husband when he threw the keys on the bed. However, the trial court found that “on

6/30/2017, defendant threw keys at plaintiff and yelled profanity at her.” (Emphasis

added). Defendant-Husband challenges this finding, and we agree that it is

unsupported by the evidence presented at the hearing. In her complaint and in her

testimony, Plaintiff-Wife alleged that Defendant-Husband “threw the keys down” on

the bed. No evidence supports the trial court’s finding that Defendant-Husband

“threw keys at plaintiff.”

 2. Finding of Demeanor and Past Behavior

 Defendant-Husband concedes that competent evidence supports the trial

court’s finding that “defendant has a ‘flashpoint’ temper”; however, Defendant-

Husband argues that this finding nevertheless does not support a conclusion that

domestic violence occurred. We agree.

 “To support entry of a [domestic violence protective order], the trial court must

make a conclusion of law ‘that an act of domestic violence has occurred.’ ” Kennedy

v. Morgan, 221 N.C. App. 219, 223, 726 S.E.2d 193, 196 (2012) (quoting N.C. Gen.

Stat. § 50B-3(a)). “Although we appreciate that a ‘history of abuse’ may at times be

quite relevant to the trial court’s determination as to whether a recent act constitutes

‘domestic violence,’ a vague finding of a general ‘history of abuse’ is not a finding of

an ‘act of domestic violence’ . . . .” Id.

 - 14 -
 MARTIN V. MARTIN

 Opinion of the Court

 Here, Plaintiff-Wife testified several times concerning Defendant-Husband’s

anger issues. For example, Plaintiff-Wife testified that Defendant-Husband “has

always been an angry person[,]” and that after he threw the keys on the bed, “he was

the most angry I’ve ever seen him at that point.” Plaintiff-Wife further testified

concerning a different incident stating that

 [Defendant-Husband] has been angry, has always been
 angry. He’s always had issues with anger in work,
 wherever he is.

 He’s been angry at me plenty of times, . . . and he
 just became so unpredictable and so angry, I just never
 knew what he was going to do next.

 From this testimony, the trial court found that Defendant-Husband “has a

‘flashpoint’ temper.” This is not a finding of fact that an act of domestic violence, as

defined by statute, had occurred, but rather more of a finding concerning Defendant-

Husband’s demeanor and past behavior. The trial court’s finding that Defendant-

Husband has a flashpoint temper does not “identify the basis for the act of domestic

violence.” Id. at 224, 726 S.E.2d at 196 (quotation marks omitted) (citing In re Estate

of Mullins, 182 N.C. App. 667, 671, 643 S.E.2d 599, 602, disc. review denied, 361 N.C.

693, 652 S.E.2d 262 (2007) (“The trial court need not recite in its order every

evidentiary fact presented at hearing, but only must make specific findings on the

ultimate facts that are determinative of the questions raised in the action and

essential to support the conclusions of law reached. Ultimate facts are the final facts

 - 15 -
 MARTIN V. MARTIN

 Opinion of the Court

required to establish the plaintiff’s cause of action or the defendant’s defense.”

(citation omitted))). Accordingly, this finding cannot support a conclusion that

Defendant-Husband committed an act of domestic violence as defined by N.C. Gen.

Stat. § 50B-1.

 3. Finding Concerning Fear of Serious Bodily Injury

 Defendant-Husband next contends that the trial court’s finding that “plaintiff

was afraid of defendant and what he might do” does not support the trial court’s

conclusion that Defendant-Husband placed Plaintiff-Wife in fear of imminent serious

bodily injury. We agree.

 “The test for whether the aggrieved party has been placed ‘in fear of imminent

serious bodily injury’ is subjective; thus, the trial court must find as fact the aggrieved

party ‘actually feared’ imminent serious bodily injury.” Smith, 145 N.C. App. at 437,

549 S.E.2d at 914 (citation omitted). In Smith, the plaintiff testified that the

defendant’s actions “made her feel uncomfortable and creepy.” Id. at 437, 549 S.E.2d

at 914-15 (quotation marks omitted). The trial court found that the “[p]laintiff

testified [that the] [d]efendant had never physically hurt her, nor was she afraid that

he would physically hurt her.” Id. at 438, 549 S.E.2d at 915. The Smith Court held

that “[t]hese findings of fact which show [the] [d]efendant’s conduct caused [the]

[p]laintiff to feel uncomfortable but did not place her in fear of bodily injury do not

 - 16 -
 MARTIN V. MARTIN

 Opinion of the Court

support a conclusion [that the] [d]efendant placed [the] [p]laintiff in fear of serious

imminent bodily injury.” Id. (quotation marks omitted).

 In the instant case, Plaintiff-Wife testified several times that she was “fearful”

or “scared” of Defendant-Husband. She testified that she was afraid of his anger,

afraid that Defendant-Husband would take the children away, and fearful of what he

might “do next.” Plaintiff-Wife also testified that after Defendant-Husband used a

key to enter the bedroom, “I didn’t know if he was going to hit me. I didn’t know if he

was going to take my purse. I didn’t know what to expect.”

 Plaintiff-Wife further testified about an incident when she found the children’s

backpacks full of their belongings, and she was concerned that Defendant-Husband

was going to leave with the children. When Plaintiff-Wife confronted him, Defendant-

Husband cursed at her, slammed the door, and walked away. Plaintiff-Wife testified

that

 I didn’t know what he was going to do. I didn’t know if he
 was going to go and grab the children and leave or if he was
 going to harm me, come back in and hit me. I didn’t know.

 He was very unpredictable. I didn’t know what he
 was going to do.

 Additionally, defense counsel asked Plaintiff-Wife whether Defendant-

Husband had ever “hurt,” “hit,” or “harmed” her. Plaintiff-Wife answered that

Defendant-Husband “pushed [her] away” on one occasion; however, when asked

 - 17 -
 MARTIN V. MARTIN

 Opinion of the Court

again, Plaintiff-Wife stated, “[h]e has not physically hurt me, no. But I didn’t know

if he could.”

 Although certainly not an exoneration of Defendant-Husband’s behavior, none

of the evidence presented to the trial court supports the conclusion that Defendant-

Husband’s actions subjectively caused Plaintiff-Wife to fear imminent serious bodily

injury. Defendant-Husband was unpredictable, and Plaintiff-Wife testified that she

was afraid and never knew what he was going to do next. However, regardless of

Defendant-Husband’s disconcerting behavior, none of his actions amounted to

evidence that Defendant-Husband placed Plaintiff-Wife in fear of imminent serious

bodily injury. Accordingly, the trial court’s findings of fact do not support its

conclusion that Defendant-Husband placed Plaintiff-Wife in fear of imminent serious

bodily injury.

 4. Finding Concerning Substantial Emotional Distress

 Finally, Defendant-Husband argues that the trial court’s findings of fact fail to

support the conclusion that Defendant-Husband placed Plaintiff-Wife in fear of

continued harassment inflicting substantial emotional distress. We agree.

 As explained above, a trial court can determine that an act of domestic violence

occurred when a person in a qualifying relationship with another “[p]lac[es] the

aggrieved party . . . in fear of . . . continued harassment, as defined in G.S. 14-277.3A,

that rises to such a level as to inflict substantial emotional distress.” N.C. Gen. Stat.

 - 18 -
 MARTIN V. MARTIN

 Opinion of the Court

§ 50B-1(a)(2). The domestic violence statute refers to Chapter 14, which defines

“harassment” as “[k]nowing conduct, including . . . electronic mail messages or other

computerized or electronic transmissions directed at a specific person that torments,

terrorizes, or terrifies that person and that serves no legitimate purpose.” Id. § 14-

277.3A(b)(2). Thus, to support a conclusion that harassment rose to the level of

domestic violence, the trial court must find that the defendant (1) knowingly

committed an act; (2) directed at a person with whom the defendant shared a

“personal relationship,” as defined by N.C. Gen. Stat. § 50B-1(b); (3) which tormented,

terrorized, or terrified the aggrieved party; and (4) served no legitimate purpose. See

id.; Kennedy, 221 N.C. App. at 222, 726 S.E.2d at 195-96. As with fear of imminent

serious bodily harm, “[t]he plain language of the statute requires the trial court to

apply only a subjective test to determine if the aggrieved party was in actual fear; no

inquiry is made as to whether such fear was objectively reasonable under the

circumstances.” Wornstaff v. Wornstaff, 179 N.C. App. 516, 518-19, 634 S.E.2d 567,

569 (2006), aff’d per curiam, 361 N.C. 230, 641 S.E.2d 301 (2007).

 At the hearing, Plaintiff-Wife testified that Defendant-Husband hacked into

her email account, and she presented a screenshot of its security page to support her

testimony. Plaintiff-Wife testified that the screenshot “show[ed] what devices [were]

signed into [her] email [account],” and that Defendant-Husband’s “phone was signed

into [her] email account” from Seattle, Washington. Plaintiff-Wife testified that she

 - 19 -
 MARTIN V. MARTIN

 Opinion of the Court

“noticed that there were some drafts in my Yahoo account with forwarded emails from

my email to his email,” and that she was “shocked that his phone was signed into

[her] personal email.”

 There is a dearth of case law concerning computer hacking, especially in the

domestic violence context; however, in an unpublished opinion from this Court, we

considered whether, pursuant to N.C. Gen. Stat. § 50B-1(a)(2), the defendant’s

hacking of a Facebook account placed the plaintiff in fear of continued harassment

that rises to such a level as to inflict substantial emotional distress. See Jackson v.

Jackson, 238 N.C. App. 198, 768 S.E.2d 63 (2014) (unpublished), COA14-440, 2014

N.C. App. LEXIS 1299. We find the analysis in this case to be persuasive.

 In Jackson, the defendant hacked into the plaintiff’s Facebook account and

posted videos and messages that the plaintiff characterized as “ ‘trash’ and ‘slander.’ ”

Id., 2014 N.C. App. LEXIS 1299, at *5-6. “[B]ecause the video and messages were

posted to [the p]laintiff’s Facebook account and directly referred to [the p]laintiff,”

the hacking and posting of messages satisfied the “directed at a person” element of

harassment. Id. at *17. However, the plaintiff denied that she had suffered

“substantial emotional distress” or “sought any counseling” because of the Facebook

hacking, and there was no other evidence that she suffered substantial emotional

distress. Id. at *18. Thus, there was no support for a finding that the hacking caused

 - 20 -
 MARTIN V. MARTIN

 Opinion of the Court

the plaintiff substantial emotional distress, or constituted an act of domestic violence.

Id. at *19.

 In the instant case, Plaintiff-Wife failed to present evidence that Defendant-

Husband’s hacking of her email account caused her substantial emotional distress.

The trial court stated that the hacking “caused [Plaintiff-Wife] emotional distress.”

However, while Plaintiff-Wife testified that Defendant-Husband’s actions “shocked”

her, she did not testify that the hacking caused her emotional distress—substantial

or otherwise—or fear of continued harassment. This testimony is insufficient to

support a finding that the hacking caused Plaintiff-Wife substantial emotional

distress. See N.C. Gen. Stat. § 14-277.3A(b)(4) (defining “substantial emotional

distress” as “[s]ignificant mental suffering or distress that may, but does not

necessarily, require medical or other professional treatment or counseling”). Further,

no other evidence exists in the record to support a finding that Defendant-Husband’s

hacking of Plaintiff-Wife’s email account, although clearly reprehensible, caused

Plaintiff-Wife to suffer substantial emotional distress. Accordingly, there was no

evidence presented to support the trial court’s finding that Defendant-Husband

caused Plaintiff-Wife to suffer substantial emotional distress by hacking into her

email account.

 C. Custody

 - 21 -
 MARTIN V. MARTIN

 Opinion of the Court

 Defendant-Husband last argues that the trial court lacked jurisdiction to enter

a temporary custody order regarding the parties’ minor children. However, in that

the temporary order has expired, this issue is moot.

 In its Amended Domestic Violence Order of Protection entered on 12

September 2017, the trial court granted Plaintiff-Wife temporary custody of the

minor children. In the order, the trial court recognized that competing custody claims

were pending in Wake County and Washington State, and that the parties had

scheduled a hearing in Washington for 21 September 2017 to determine jurisdiction.

Nevertheless, the trial court determined that it was in the children’s best interests to

establish a temporary custody and visitation agreement until the custody cases could

be heard.

 In North Carolina, a temporary custody award entered in a Chapter 50B order

cannot last longer than one year. N.C. Gen. Stat. § 50B-3(a1)(4) (“A temporary

custody order entered pursuant to this Chapter shall be without prejudice and shall

be for a fixed period of time not to exceed one year.”). Nor may “a temporary award

of custody entered as part of a protective order . . . be renewed to extend a temporary

award of custody beyond the maximum one-year period.” Id. § 50B-3(b).

 In the instant case, the trial court’s custody order did not have an expiration

date or state the fixed period of time for which it was to apply. As a result, the custody

 - 22 -
 MARTIN V. MARTIN

 Opinion of the Court

order in the instant case necessarily expired no later than 12 September 2018, more

than one month before this matter came on for hearing by this Court.

 “A case is moot when a determination is sought on a matter which, when

rendered, cannot have any practical effect on the existing controversy.” Roberts v.

Madison Cty. Realtors Ass’n, 344 N.C. 394, 398, 474 S.E.2d 783, 787 (1996) (quotation

marks omitted). “[T]he proper procedure for a court to take upon a determination

that [an issue] has become moot is dismissal of the action . . . .” Id. at 399, 474 S.E.2d

at 787. Accordingly, we dismiss as moot Defendant-Husband’s appeal from the

expired temporary custody order.

 III. Conclusion

 The trial court erred by admitting testimony in support of unpleaded

allegations of domestic violence, and the trial court’s findings of fact fail to support a

conclusion that an act of domestic violence occurred. Accordingly, we reverse the

domestic violence protective orders entered against Defendant-Husband. Further,

we dismiss as moot Defendant-Husband’s appeal from the expired temporary custody

order.

 REVERSED IN PART; DISMISSED IN PART.

 Chief Judge McGEE and Judge TYSON concur.

 - 23 -