DEBORAH J. BRANDON, Plaintiff v. MICHAEL BRANDON, Defendant

No. COA98-329

(Filed 6 April 1999)

### 1. Assault— Domestic Violence Protective Order—form disapproved

An AOC form for a Domestic Violence Protective Order (DVPO) was disapproved because it combined several possible findings disjunctively, so that a reviewing court would be uncertain whether the trial court found all or only some of the possibilities where evidence was presented on more than one possibility.

### 2. Assault— Domestic Violence Protective Order—serious bodily injury to plaintiff—evidence sufficient

The evidence was sufficient to support the trial court's determination when issuing a Domestic Violence Protective Order (DVPO) that serious bodily injury to plaintiff was close at hand.

### 3. Assault— Domestic Violence Protective Order—conclusions insufficient

The issuance of a Domestic Violence Protective Order (DVPO) was reversed where the trial court's conclusion that acts of domestic violence had occurred was unsupported by findings of fact in that there was no evidence that plaintiff caused or attempted to cause bodily injury against plaintiff or committed any sex offense, and the trial court made no finding regarding plaintiff's subjective fear. (It was noted that a trial court is not required to determine whether a plaintiff's subjective fear is objectively reasonable.) The conclusion that defendant had threatened plaintiff does not support the issuance of a DVPO.

**BRANDON v. BRANDON**

[132 N.C. App. 646 (1999)]

Appeal by defendant from order filed 3 October 1997 by Judge Shelly S. Holt in New Hanover County District Court. Heard in the Court of Appeals 16 February 1999.

*Lea, Clyburn & Rhine, by J. Albert Clyburn, for plaintiff-appellee.*

*John K. Burns for defendant-appellant.*

GREENE, Judge.

Michael Brandon (Defendant) appeals from the trial court's entry of a Domestic Violence Protective Order (DVPO).

Deborah J. Brandon (Plaintiff) and Defendant were married in December of 1992. Plaintiff, her two children from a previous relationship, and Defendant all resided in the parties' marital residence through mid-September of 1997. During August[1] and early September of 1997, Defendant worked out of town during the week, and only resided in the marital residence on weekends. Plaintiff testified that she generally stayed at her mother-in-law's home on the weekends while Defendant was at the marital residence. Plaintiff had changed the locks on the marital residence as a result of prior problems, but testified that, on 1 August 1997, she was instructed by her attorney to allow Defendant access to the marital residence and immediately "had keys made available to [Defendant]." That evening while Plaintiff was away from the marital residence, Defendant "smashed in the door to the garage." Defendant later told Plaintiff he had not been aware that she had made keys available to him.

Plaintiff and Defendant owned a rental house, and on 18 September 1997, Plaintiff and her children moved out of the marital residence and into the parties' rental house because "I was afraid of [Defendant]; . . . I knew somebody was going to get hurt if we didn't get out of the [marital residence] soon." On 20 September 1997, Plaintiff's parents telephoned her at work to inform her that Defendant was "sitting outside the [rental] house in the dark in the car with the lights on drinking coffee, reading the paper." Plaintiff telephoned the sheriff and returned to the rental house. Shortly after she returned, two deputies arrived. While Plaintiff spoke with the deputies,

---

1. The trial court did not allow Plaintiff's testimony concerning Defendant's behavior prior to 1 August 1997 into evidence to justify issuance of a DVPO because these incidents had been the subject of previous petitions which had been dismissed by the court.

[Defendant] went over to the garage door and was going to open that. And I put my hand and my foot on the handle so that [it] would not open. [Defendant] started carrying on, "Oh, she's attacking me; look, she's attacking me; I'm being abused." And the police stepped in at that point and said, no, I was not attacking him. And at that point that's when they asked him that he better leave.

Plaintiff continued:

At that point I was so upset and so afraid of what was going to happen because the police indicated to me that he had a right to break in, he had a right to bust anything he wanted because we jointly own this piece of [rental] property. They could not prevent him from going in. I was scared to death.

Plaintiff testified that the deputies "finally had to tell [Defendant] to leave. . . . At that point, he finally did walk out, laughing. He mumbled to me he would see me later, and he left." Plaintiff testified that she immediately "removed [her children] from the [rental] house. I had them go stay with their grandmother." Within the next two days, Plaintiff was informed by a neighbor that, on the afternoon of 20 September 1997, Defendant had stated "he would put a bullet between [Plaintiff's] eyes if [she] came near his property." On 22 September 1997, Plaintiff filed a complaint and motion for a DVPO.

Deputy Sheriff Shawn Patrick Bowen (Deputy Bowen) testified that, on 20 September 1997, when he and another deputy arrived at the rental house Plaintiff had moved into with her children, Defendant was sitting in his car across the street. The deputies spoke with Defendant, then "went to the [rental] house. And [Defendant] followed us up to the house. And we asked him to please step back and let us go talk to [Plaintiff] first to get her side of the story." While the deputies were inside speaking with Plaintiff, Deputy Bowen "heard the garage door—I heard like a banging."

And that's when [Plaintiff] ran outside of the [rental] house and said he's breaking into my garage. So, we followed right behind. . . . And I did observe his hand on the handle and he was trying to open the door. And then [Plaintiff] put her hand on the handle and her foot down on the door and told him to stop. And he backed up and said she—if I can recall correctly, he said, "She

assaulted me. Did you see that?" And we said, "She did not assault you; let's end this now."

Deputy Bowen also testified that Plaintiff "was asking us is there anything we can do. Finally we had to stop him and we had to ask him to leave before there was [sic] any other problems." Deputy Bowen noted that as Defendant was leaving, "he did say, 'I will get you' [to Plaintiff]. And we did tell him we don't want to hear no threats here. And he said, 'in court.' " Deputy Bowen further testified that although Plaintiff did not call for further assistance that day, "we did keep checking back on the place."

Defendant also testified at the hearing, stating that he had telephoned the sheriff's department early on the morning of 20 September 1997 to ask them to meet him at the parties' rental house so he could retrieve his personal property. Defendant testified that when the deputies asked him to leave the premises, he "turned around to [Plaintiff] and I said I will get back or something there to that effect. And then the officer said don't make threats. And I said, 'Sir, I'm not making threats; I'll get her in court.' And I turned around and left." Defendant further testified that, after returning to the marital residence, he went to a neighbor's home and began discussing the parties' separation. A neighbor asked Defendant what he would do if Plaintiff came onto his property, and Defendant responded that he would call the police. The neighbor then asked what he would do if the police did not come, and Defendant replied: "I'm going to run in the house." Finally, the neighbor asked what Defendant would do if Plaintiff "comes at you with a gun?" Defendant responded: "I'm going to shoot her right between the damn eyes." It was Defendant's understanding that the neighbor later told Plaintiff that Defendant had threatened to shoot her between the eyes. Defendant testified that he "never ha[d] hurt her, never would hurt her, [and had] no desire to hurt anybody on this earth."

On cross-examination, Plaintiff's attorney asked Defendant if, after speaking to the deputies on the morning of 20 September 1997, he thought it was okay to attempt to break into the garage of the parties' rental house. Defendant responded:

The conversation I had at length with the sheriff, the deputy sheriff, was as to what rights I would have. And yes, I had the right to touch my own [rental] house. Yes, I had the right to do a lot of things. Just as [Plaintiff] testified earlier, I had the right to break i[n] if I had to.

BRANDON v. BRANDON

[132 N.C. App. 646 (1999)]

After hearing all the testimony, the trial court marked the following finding[2] on the Administrative Office of the Courts Form AOC-CV-306, a preprinted form DVPO:

> The defendant has attempted to cause or has intentionally caused bodily injury to the plaintiff or has threatened the plaintiff or a member of plaintiff's family or household with immediate serious bodily injury; or has committed a sexual offense against the plaintiff; the last act of violence occurred on or about *9/20/97 [Defendant] went to plaintiff's residence unannounced even though he knew both parties had attorneys & they had been in court previously, didn't follow request of NHCSD deputy to wait without entering the property in that he attempted to enter plaintiff's garage, and in front of deputies told plaintiff he'd get her.*

The trial court, based on these findings, marked the following conclusions on the form DVPO:

> The defendant has committed acts of domestic violence against the plaintiff.

> There is danger of serious and immediate injury to the plaintiff.

Finally, the trial court entered its order by marking the following:

> [T]he defendant shall not assault, threaten, abuse, follow, harass by telephone, visiting the home or workplace or other means, or interfere with the plaintiff. A law enforcement officer shall arrest the defendant if the officer has probable cause to believe the defendant has violated this provision.

> [T]he defendant shall not threaten a member of the plaintiff's family or household.

> [T]he defendant shall stay away from . . . the place where the plaintiff works.

Defendant appeals from entry of the DVPO.

---

The issues are whether: (I) the trial court's findings of fact are supported by competent evidence; and (II) the findings of fact support the trial court's conclusions of law.

---

2. The trial court's handwritten additions to the DVPO are italicized.

BRANDON v. BRANDON

[132 N.C. App. 646 (1999)]

**[1]** Before addressing the merits of Defendant's case, we note that the standard form for a DVPO, Form AOC-CV-306, combines several possible findings, disjunctively, in one group. For example, where the trial court marks block number three of the form, as it did in this case, it finds:

> The defendant has attempted to cause *or* has intentionally caused bodily injury to the plaintiff *or* has threatened the plaintiff *or* a member of plaintiff's family or household with immediate serious bodily injury; *or* has committed a sexual offense against the plaintiff . . . .

Form AOC-CV-306 (October 1996) (emphases added).[3] In a case where evidence is presented on more than one of the possibilities disjunctively listed, the trial court's mark leaves a reviewing court uncertain whether the trial court found all, or only some, of these possibilities. If, on review, we determine that no competent evidence exists to support one of the possibilities, we would be forced to remand because we would have no way of knowing whether the possibility unsupported by competent evidence was the only possibility which the trial court actually found. Accordingly, we specifically disapprove of the preprinted Form AOC-CV-306 as it is currently written.

In this case, it is clear from the trial court's handwritten additions to the form DVPO that it found Defendant threatened to "get" Plaintiff. We therefore review whether evidence supports this finding and whether this finding supports issuance of the DVPO.

I

**[2]** Where the trial court sits as the finder of fact, "and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial [court]." *Repair Co. v. Morris & Associates*, 2 N.C. App. 72, 75, 162 S.E.2d 611, 613 (1968).

> [This Court] can only read the record and, of course, the written word must stand on its own. But the trial judge is present for the full sensual effect of the spoken word, with the nuances of meaning revealed in pitch, mimicry and gestures, appearances and postures, shrillness and stridency, calmness and composure, all of which add to or detract from the force of spoken words.

---

3. Form AOC-CV-306 has been revised since this case was before the trial court; however, the new Form AOC-CV-306 continues to group several possible findings together disjunctively. *See* Form AOC-CV-306 (May 1998).

*State v. Sessoms,* 119 N.C. App. 1, 6, 458 S.E.2d 200, 203 (1995), *aff'd per curiam,* 342 N.C. 892, 467 S.E.2d 243, *and cert. denied,* —— U.S. ——, 136 L. Ed. 2d 129 (1996). The trial court's findings "turn in large part on the credibility of the witnesses, [and] must be given great deference by this Court." *Id.* Accordingly, where the trial court's findings of fact are supported by competent evidence, they are binding on appeal. *Harris v. Harris,* 51 N.C. App. 103, 105, 275 S.E.2d 273, 275, *disc. review denied,* 303 N.C. 180, 280 S.E.2d 452 (1981).

In this case, a thorough review of the evidence reveals that the only portion of the finding marked by the trial court which is supported by the evidence is that Defendant "threatened the plaintiff . . . with immediate serious bodily injury . . . and in front of deputies told plaintiff he'd get her." Plaintiff testified that Defendant had "mumbled . . . he would see me later" and had stated "he would put a bullet between [Plaintiff's] eyes if [she] came near his property." Deputy Bowen testified that "we had to stop [Defendant] and we had to ask him to leave before there was [sic] any other problems," and that he heard Defendant say "I will get you" to Plaintiff as he left the premises. Accordingly, the record contains competent evidence that Defendant threatened Plaintiff with serious bodily injury.

Defendant, however, contends there is no competent evidence that he threatened "immediate" bodily injury. "Immediate" is defined as "[o]ccurring at once; instant; . . . [o]f or near the present time; . . . [c]lose at hand; near." *American Heritage College Dictionary* 678 (3d ed. 1993). In this case, competent evidence reveals that Defendant had attempted to enter the garage at the parties' rental house against Plaintiff's will on the morning of the 20th, and had threatened Plaintiff at that time in her presence and in the presence of deputies. After this confrontation, Plaintiff took her children to stay with their grandmother. Later that evening, out of Plaintiff's presence, Defendant threatened to shoot Plaintiff and this threat was relayed to her. Finally, Deputy Bowen testified that he and his partner "ke[pt] checking back on the place" after asking Defendant to leave the premises. Accordingly, despite Defendant's testimony that he did not intend to harm Plaintiff, the evidence supports the trial court's determination that serious bodily injury to Plaintiff was "close at hand." We emphasize that the trial court was present to see and hear the inflections, tone, and temperament of the witnesses, and that we are forced to review a cold record. We cannot say that the inferences drawn by the trial court from the evidence were unreasonable; therefore we are bound by this portion of the trial court's finding.

BRANDON v. BRANDON

[132 N.C. App. 646 (1999)]

II

**[3]** The trial court's findings of fact must support its conclusions of law. *Blanton v. Blanton*, 40 N.C. App. 221, 225, 252 S.E.2d 530, 533 (1979).

In this case, the trial court first concluded Defendant "has committed acts of domestic violence against [Plaintiff]." "Domestic violence" is statutorily defined as "the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship"[4]:

(1) Attempting to cause bodily injury, or intentionally causing bodily injury; or

(2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury; or

(3) Committing any act defined in G.S. 14-27.2 through G.S. 14-27.7 [(*i.e.*, sex offenses)].

N.C.G.S. § 50B-1(a) (Supp. 1998).[5] No competent evidence was presented that Defendant caused or attempted to cause bodily injury or committed any sex offense against Plaintiff or a minor child in her custody,[6] therefore the trial court could not have concluded that an act of domestic violence had occurred pursuant to the definitions in subsection (1) or (3) of section 50B-1(a). Competent evidence was presented to support the trial court's finding that Defendant had "threatened the plaintiff . . . with immediate serious bodily injury . . . and in front of deputies told plaintiff he'd get her." It does not necessarily follow from this finding, however, that Plaintiff was "in fear of imminent serious bodily injury," as is required to show that an act of domestic violence has occurred pursuant to subsection (2). *Cf. Dickens v. Puryear*, 302 N.C. 437, 446, 276 S.E.2d 325, 331 (1981)

---

4. It is undisputed that Plaintiff is an "aggrieved party" and that she and Defendant had a "personal relationship."

5. Although amendments were made to section 50B-1 effective 1 December 1997 for offenses committed on or after that date, *see* N.C.G.S. § 50B-1, Editor's Note, these amendments are not relevant to Defendant's appeal.

6. Although Plaintiff testified that Defendant "hit [her thirteen-year-old son] repeatedly over the head with siding," the trial court specifically stated that it would not consider this testimony as grounds for issuance of a DVPO because complaints based on these actions had previously been dismissed by the court.

("Ordinarily mere words . . . do not put the other in apprehension of an imminent bodily contact . . . ."). Although Plaintiff testified that she was afraid of Defendant and did not know what he would do, the trial court made no finding regarding Plaintiff's subjective fear.[7] We therefore cannot know whether the trial court believed Plaintiff actually feared Defendant. The trial court's conclusion of law that Defendant had committed an act of domestic violence against Plaintiff is, therefore, unsupported by sufficient findings of fact. As such, this conclusion cannot provide grounds for issuance of the DVPO.

We note that in the context of a common law action for civil assault, "[t]he determinative factor is often whether the plaintiff's apprehension of an imminent battery was reasonable in the circumstances. The courts have been reluctant to protect . . . actual, but unreasonable fear of contact." David A. Logan & Wayne A. Logan, *North Carolina Torts* § 18-20[1] (1996); *McCracken v. Sloan*, 40 N.C. App. 214, 252 S.E.2d 250 (1979) (affirming dismissal of civil assault claim where the plaintiff contended he had been assaulted by the defendant's cigar smoke). It follows that an action for civil assault requires a plaintiff to show both her own actual subjective apprehension *and* that her actual subjective apprehension was objectively reasonable under the circumstances. *See, e.g., Dickens*, 302 N.C. at 445, 276 S.E.2d at 331 (noting that the plaintiff's apprehension must be reasonable). In contrast to common law civil assault, our General Assembly has statutorily defined actionable "domestic violence." N.C.G.S. § 50B-1(a). Section 50B-1(a)(2) defines domestic violence as "placing the aggrieved party . . . in fear of imminent serious bodily injury." *Id.* The plain language of section 50B-1(a)(2) imposes only a subjective test, rather than an objective reasonableness test, to determine whether an act of domestic violence has occurred. *Id.* As the legislature did not impose an objective standard, we decline to impose one judicially. *See Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (noting that clear and unambiguous language in a statute leaves "no room for judicial construction"). Accordingly, where the trial court finds that a plaintiff is actu-

7. This is another area where the current Form AOC-CV-306 is insufficient. The statutory definition of domestic violence does not depend on whether a threat has been uttered, but on whether the plaintiff is "in fear" of imminent serious bodily injury. *See* N.C.G.S. § 50B-1(a)(2). In addition, Form AOC-CV-306 uses the term "immediate" while the statute merely requires a showing that serious bodily injury is "imminent." *Id.* These two words, although similar, are not exact synonyms. *See Dickens*, 302 N.C. at 445-46, 276 S.E.2d at 331 (distinguishing "imminent" from "immediate"). The current Form AOC-CV-306 therefore implies that a higher showing is necessary for issuance of a DVPO than is required by statute.

ally subjectively in fear of imminent serious bodily injury, an act of domestic violence has occurred pursuant to section 50B-1(a)(2). The plain language used by our legislature does not require a trial court to attempt to determine whether the plaintiff's actual subjective fear is objectively reasonable under the circumstances.

The trial court also concluded "[t]here is danger of serious and immediate injury to [Plaintiff]." The trial court's finding that Defendant had threatened Plaintiff with "immediate serious bodily injury" and that "in front of deputies [Defendant had] told plaintiff he'd get her" supports this conclusion of law. This conclusion of law, however, does not support issuance of a DVPO. *Compare* N.C.G.S. § 50B-3(a) (1996) (authorizing issuance of a DVPO "to bring about a cessation of acts of domestic violence") *with* N.C.G.S. § 50B-2(c) (Supp. 1998) (authorizing issuance of an *ex parte* DVPO pending the hearing where the trial court finds "that there is a danger of acts of domestic violence"). In this case, the trial court's conclusion that acts of domestic violence had occurred is unsupported by findings of fact; accordingly, no acts of domestic violence have been shown of which the court may "bring about a cessation." We therefore must reverse the trial court's issuance of the DVPO against Defendant.

Reversed.

Judges LEWIS and HORTON concur.