IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-428

Filed 5 February 2025

Johnston County, No. 22CVD1234-500

COURTNEY ROY obo G.E.M., Plaintiff,

v.

BENJAMIN FREEMAN MARTIN, Defendant.

Appeal by defendant from order entered 15 December 2023 by Judge Jimmy L. Love Jr., in Johnston County District Court. Heard in the Court of Appeals 6 November 2024.

*Walsh Estate & Family Law, PLLC, by Sean N. Walsh, for defendant-appellant.*

*The Green Firm, PLLC, by Bonnie Keith Green, for plaintiff-appellee.*

FLOOD, Judge.

Defendant Benjamin Freeman Martin appeals from the trial court's order renewing Plaintiff Courtney Roy's domestic violence protective order ("DVPO") against Defendant, on behalf of G.M.,[1] a minor child. Defendant argues the trial court's order for renewal was not supported by competent evidence of good cause. Upon review, we conclude the trial court's order was not supported by competent evidence of good cause, and accordingly, we reverse the order.

---

[1] A pseudonym is used to protect the identity of the minor child and for ease of reading. *See* N.C.R. App. P. 42(b).

## I. <u>Factual and Procedural Background</u>

Defendant and Plaintiff are the biological parents of G.M., who was born in March 2009. In June 2012, the Wake County District Court entered a Chapter 50 custody order ("Custody Order") governing the custody and visitation rights of the parties as to G.M. Under the Custody Order, Plaintiff and Defendant shared "joint 50/50 custody" of G.M.

On 12 April 2022, Plaintiff filed a complaint against Defendant, seeking an *ex parte* DVPO for the benefit of G.M., which the trial court entered based solely on the allegations of Plaintiff's complaint, and the *ex parte* DVPO was entered before Defendant was served. Defendant was served with the summons, complaint, and *ex parte* DVPO on 13 April 2022.

The *ex parte* DVPO set the case for a return hearing on 22 April 2022. On 22 April 2022, both parties consented to continue the hearing to 6 May 2022; on 6 May, they consented to continue the hearing again to 27 May 2022. On 27 May 2022, the case was continued again, to 8 July 2022, to allow time for both parties' counsel to obtain and review records of investigations that had been conducted by the Johnston County Department of Social Services ("Johnston County DSS") based on multiple allegations over a period of years that had been made by Plaintiff against Defendant.

Plaintiff's motion for the *ex parte* DVPO contained three allegations:

> (1) On each of the child's weekly visits from March 2022
> since the child's date of birth, Defendant has been
> recording the minor child while she is naked, and also in
> various states of dress and undress while changing clothes,
> through a video camera which [Defendant] has access to

and which displays a bright blue light whenever he is recording her, which the minor child is aware of. The minor child has asked the Defendant on multiple occasions to stop recording her, but it continues to occur each time she spends the night at his home.

(2) Despite having his own bed, Defendant requires that the minor child (13 years old) physically sleep in her [own] bed with the Defendant [45 year old] alongside her. . . each night she has an overnight visit. The minor child sleeps in an oversized t-shirt only. The minor child has also seen the Defendant naked[.]

(3) On each of the child's weekly visits from March 2022 since the child's date of birth. Defendant has placed recording devices on the minor child's electronics and cell phone provided by Defendant, which records video and audio of everything the minor child is doing. The minor child has been forced to leave these electronics in her room when she showers and use[s] the bathroom, so that [she is] not being watched by Defendant.

The motion also noted that there was, as to Defendant, a "pending investigation being conducted by [Johnston County DSS]" regarding the allegations.

On 6 June 2022, the trial court entered an order requiring Johnston County DSS to submit the "juvenile CPS[2] records" regarding G.M. to the trial court for in camera inspection, providing that the trial court would review the records, and if the file "contains relevant information to the current pending custody [sic] action[,]" the trial court would order disclosure or use of the information to counsel for the parties, with specific protective provisions. On 8 July 2022, counsel for the parties again consented to continue the hearing until 15 July 2022.

---

[2] We understand this to mean "Child Protective Services."

The trial court never held a hearing on the domestic violence complaint, but instead, on 15 July 2022, the parties entered into a domestic violence protective consent order ("Consent DVPO"). In the Consent DVPO, Defendant agreed to have no contact with Plaintiff or G.M.; not to "assault, threaten, abuse, follow, harass (by telephone, visiting the home or workplace, or other means), or interfere with [G.M.]"; and to stay away from "any place where [Plaintiff] works" and "[G.M.]'s school." The parties stipulated that "no findings of fact and conclusions of law will be included in this consent protective order." The Consent DVPO set an expiration date of 14 July 2023.

On 29 June 2023, the parties entered into a Consent Order to Modify Custody in Johnston County File No. 22CVD002221-500, in which Defendant was prohibited from having any communication or visitation with G.M., and Plaintiff was granted sole legal and physical custody of G.M.[3]

On 6 July 2023, Plaintiff moved to renew the *ex parte* DVPO. In her motion to renew, Plaintiff repeated the same allegations as quoted above from the original complaint. Plaintiff did not allege any violation of the DVPO by Defendant, but she added the following allegations since the entry of the Consent DVPO:

> [T]he minor child remains in fear of continued harassment that rises to such a level as to inflict substantial emotional distress, and which is detrimental to her safety, health and wellbeing, in that:

---

[3] Our Record does not include information on whether the original Wake County Chapter 50 custody case was moved to Johnston County or if this Consent Order was entered in another Chapter 50 custody proceeding.

4. The minor child continues to experience intense anxiety over the fear that Defendant will attempt contact, communication of any kind, and show up at her school or home.

5. On April 13 2023[,] the minor child had to be rushed to two emergency therapy sessions due to distress caused by a letter and subpoena she received from [Defendant's] attorney regarding the parties' previous chapter 50 custody matter. The letter was addressed to her personally which made her feel threatened. The minor child did not test well in school the following day due to receiving the letter[, which] caused further distress for her. The minor child reports that she feels sad, annoyed, scared and wants nothing to do with [Defendant], and she wishes he would just leave her alone.

6. The minor child continues to fear that her electronics are being hacked by [Defendant]; and

7. The minor child is afraid to see [Defendant].

On 7 September 2023, the trial court entered another Protective Order for CPS records directing that Johnston County Child Protective Services[4] ("Johnston County CPS") produce records of investigations regarding G.M. be produced for in camera review, so the trial court could determine whether the records contained relevant information. A hearing was held on 15 December 2023. Both parties testified at the hearing, and portions of records from the Johnston County CPS investigations were produced to the trial court.

---

[4] The Order also refers at one point to Wake County Child Protective Services ("Wake County CPS"). It is not clear if this is a typographical error in the order. The records included in the 9(d) supplement to the Record were produced by Johnston County DSS but also included some records from Wake County CPS. Because Defendant lived in Wake County, social workers from Wake County DSS assisted Johnston County DSS in the investigation.

The Johnston County CPS records indicated generally that Plaintiff made multiple reports of some form of abuse or neglect by Defendant to Johnston County CPS since 2014; each report was investigated, and Johnston County CPS closed each case without taking any action. During this time, Plaintiff and Defendant shared joint custody of G.M., and G.M. spent half of the time with each parent. Plaintiff first reported "concerns for the child when she is with [Defendant]" when G.M. was about five years old, in 2014. Plaintiff reported vague concerns that Defendant "has a lot of different girlfriends and marriages and a bunch of children," and that Plaintiff did not know "how [G.M.] is being taken care of with [Defendant]." Plaintiff reported that G.M. may be wearing clothes that were too small or inappropriate for the weather in the summer and that Defendant gives G.M. "ice cream for breakfast." After an investigation involving speaking with various people knowledgeable about G.M., including medical and therapy personnel who provided care for her, Johnston County CPS concluded that: there was no maltreatment, were no safety issues, were no significant assessed risk factors; and that G.M. was not in need of Johnston County CPS services. The first case was closed on 14 October 2014.

On 23 October 2014, Plaintiff again made a report to Johnston County CPS regarding Defendant. The social worker noted that Plaintiff was "a little upset" and "she first wanted to know why the case before this one was closed" and "she feels nothing is being done." Plaintiff repeated her general complaints regarding G.M.'s care by Defendant. Again, Johnston County CPS investigated Plaintiff's claims, including examination of G.M. for signs of abuse and consultations with G.M.'s

medical and therapy providers and school. Ultimately, Johnston County CPS again concluded there was no need for CPS services.

On 31 March 2022, prior to Plaintiff filing the complaint in this matter, Plaintiff made another report regarding Defendant to Johnston County CPS. Plaintiff reported "that [Defendant] has watched [G.M.] undress and dress in her room previously and made [G.M.] uncomfortable." Again, Johnston County DSS did an extensive investigation, including interviews of the parties and others with knowledge about G.M., as well as a Child Medical Evaluation by the Cary Police Department. The case report noted there had been "multiple reports on this family, all of them were unsubstantiated or SNR."[5] Ultimately, Johnston County CPS concluded there were no safety concerns, and the case was closed with "services not recommended." In summary, the Johnston County CPS records indicated that Plaintiff's allegations of Defendant's actions as stated in the complaint for the DVPO were without any factual basis.

At the hearing on renewal of the DVPO, the testimony presented by both Defendant and G.M. also failed to support Plaintiff's allegations. Regarding the first allegation that Defendant recorded G.M. while she was naked, Defendant denied ever recording G.M. No recording or record of Defendant's recording G.M. was introduced into evidence. The only evidence as to this allegation came from DSS's report, which stated, G.M. "says she reported cameras in the room, but it was years ago." Johnston

---

[5] In context of the report, "SNR" means "services not recommended."

County CPS records indicate this claim was investigated and not substantiated. Defendant informed Johnston County CPS that he had used a "nanny cam" in his home for about three months when G.M. was about ten years old. Johnston County CPS found no other indication of camera use or recording of G.M.

As to the second allegation that Defendant required G.M. to allow him to sleep in her bed, Defendant testified, "[a]t night, [G.M.] wanted me to come down and hum a song. We had a song. It's called Boadicea by Enya. I would hum the song and say good night[,] and I was married, so I would walk upstairs and sleep next to my wife." G.M. testified on direct examination:

> Q. Anything uncomfortable ever happen when you guys were sleeping in the same bed?
>
> A. Not that I remember, no.
>
> Q. Okay. And was this [Defendant']s idea to sleep in bed with him or who[se] idea was it?
>
> A. Well, I was still sort of clinging on to like -- I was at the age of still wanted to sleep, so --
>
> Q. Sure.

G.M. later testified on cross-examination:

> Q. And you also told them that nothing had ever happened with your father around the bed; is that right?
>
> A. Not that I remember, no.
>
> Q. And in fact, what you told the social workers was that you just wanted your own space. Does that sound right?
>
> A. Yes.

As to the third, and final, allegation that Defendant was surveilling G.M.'s electronic devices, G.M. testified:

> Q. Okay. Other than recording, anything else that happened with dad that made you uncomfortable that makes you still afraid today?
>
> A. He would listen in on my conversations on my technology and he would, like get in my business on the technology and stuff. So sometimes I could tell he was on my -- so I'd be on my computer and you could tell he was on there watching me.

Defendant testified to this allegation, stating, "[w]ell, I pay the bill and she has a tendency of trying to watch Youtube videos quietly that were not age appropriate. So I blocked them like any parent."

On direct examination, G.M. was questioned on whether she was afraid of Defendant, and she explained that she is "scared that he's going to try to do something, like try to come up with something and stuff." When pressed on this answer, she testified:

> Q. Okay. You said – you just said something about afraid he's going to try to something. Can you tell me what it is that you're – like what kind of scenarios are you afraid may happen with your dad?
>
> A. I'm afraid he's going to convince me to come back or he's going to be sorry or something and do – he's best at manipulating.
>
> Q. Do you have any fear of physical harm from your dad?
>
> MR. WALSH: I'm going to object to that, Your Honor. That's a leading question.
>
> MS. VAN PATTEN: It's a yes or no.

JUDGE LOVE: Overruled. I'll allow it.

A. Yes.

Q. Okay. What kind of physical harm are you afraid of?

A. Scared that he's going to get mad at me and – 'cause why I did this, and I'm scared he's going to hurt me or something.

When G.M. was questioned on cross-examination as to whether she remained afraid of Defendant, she testified:

Q. [G.M.], you said you're worried your – what you're afraid is that your dad might convince you to come back. Is that what you told the Court before?

A. Yes, sir.

Q. And you're afraid that your dad would get mad at you?

A. Yes.

Q. Okay, but yet, he's never done anything physically violent to you; is that right?

A. Not that I remember.

After the hearing, the trial court rendered its ruling to renew the DVPO, but indicated that the meaning of "good cause" was not clear, stating that:

Well, there's not a lot of case law on 50(c)'s[6] and [G.M.] did testify she's afraid of the Defendant, that would be afraid to see him and so that's the question. So I guess the Court of Appeals [or] Supreme Court will have to decide is whether that – and I know what your argument is, Mr. Walsh, but whether that's irrational or you know, not

---

[6] Plaintiff sought renewal of the Chapter 50B DVPO under N.C.G.S. § 50B-3(b). No claim was made under Chapter 50C, so we assume the reference to Chapter 50C was a *lapsus linguae*.

based on facts or what. But you know, use this for good cause showing she's still scared. I mean, I – I'm going to grant the renewal and – and I'm hoping you'll take it up because I want somebody to tell me, give us some guidelines on this. Because I mean, the way it is now, good cause shown doesn't mean a whole lot.

The trial court entered an order renewing the DVPO. The order included findings regarding the procedural history of the case. The trial court also found as follows:

> 6. In the *[e]x [p]arte* DVPO Order, the [trial c]ourt made the following relevant findings of fact regarding danger to the minor child [G.M.]:
>
> a. That [Defendant] has placed the minor child in fear of continued harassment that rises to such a level as to inflict substantial emotional distress;
>
> b. That the minor child is exposed to a substantial risk of emotional injury and it is in the best interest of and is necessary for the safety of the minor child that [D]efendant stay away from the minor child and not remove the minor child from [Plaintiff];
>
> c. The minor child disclosed to [Plaintiff] on or about April 7th 2022, that as recently as March 1-7 2022, that:
>
> d. On each of the child's weekly visits from March 1-7, 2022, since the child's date of birth, [Defendant] has been recording the minor child while she is naked, and also in various states of undress while changing clothes, through a video camera which he has access to and which displays a bright blue light whenever he is recording her, which the minor child is aware of. The minor child has asked the [Defendant] on multiple occasions to stop recording her, but it continues to occur each time she spends the night at his home;
>
> e. Despite having his own bed, Defendant requires that the minor child (13 years old) physically sleep in her [own] bed

with the Defendant [45 year old] alongside her . . . each night she has an overnight visit. The minor child sleeps in an oversized t[-]shirt only. The minor child has also seen [Defendant] naked; and

f. On each of the child's weekly visits from March 1-7 2022, since the child's date of birth, [Defendant] has placed recording devices on the minor child's electronics and cell phone provided by [Defendant], which records video and audio of everything the minor child is doing. The minor child has been forced to leave these electronics in her room when she showers and use[s] the bathroom, so that she is not being watched by [Defendant].

The trial court also found as follows:

11. That within the [trial c]ourt's discretion, the [trial c]ourt has hereby found that good cause exists to grant Plaintiff's Motion to Renew the July 15 2022 [DVPO], for reasons including but not limited to the following:

a. Plaintiff minor child testified that she remains in fear of Defendant for her and her family;

b. Plaintiff minor child testified that she remains in fear of seeing the Defendant out in public for fear of what he may do or say to her; and

c. Plaintiff minor child testified that she remains afraid of receiving physical harm at the hands of Defendant.

Defendant timely appealed.

## II. **Jurisdiction**

This Court has jurisdiction to review a final judgment from a district court, pursuant to N.C.G.S. § 7A-27(b)(2) (2023).

## III. **Standard of Review**

"The standard of review of a trial court's order renewing a [DVPO] is strictly

limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence[,]" and "whether those factual findings in turn support the judge's ultimate conclusions of law." *Ponder v. Ponder*, 247 N.C. App. 301, 306 (2016) (citation omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *Real Time Resols., Inc. v. Cole*, 293 N.C. App. 632, 635 (2024) (citation omitted) (cleaned up).

"The trial court's conclusions of law are reviewable *de novo*." *Id.* at 635 (citation omitted) (cleaned up). "Under a *de novo* review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337 (2009) (citations and internal quotation marks omitted).

## IV. <u>Analysis</u>

On appeal, Defendant argues there is no competent evidence to support the trial court's findings of fact, and contends Plaintiff failed to show good cause to renew the DVPO, by failing to demonstrate a continued legitimate fear of Defendant on the part of G.M. We agree.

"For a [trial] court to renew a protective order, a plaintiff seeking the renewal must show good cause." *Ponder*, 247 N.C. App. at 306 (citation and internal quotations omitted); *see also* N.C.G.S. § 50B-3(b) (2023) ("The court may renew a protective order for good cause."); *see also* N.C.G.S. § 50B-1 (2023) (providing a DVPO is appropriate in situations where a person "attempt[s] to cause bodily injury, or intentionally caus[es] bodily injury[,]" or places one in "fear of imminent serious

bodily injury or continued harassment," or commits "any act defined in [N.C.G.S. §]14-27.21 through [N.C.G.S. §] 14-27.33").

Per prior North Carolina appellate caselaw, a showing of good cause requires a plaintiff to demonstrate the minor child's continued, legitimate fear of the defendant. *See e.g., Comstock v. Comstock*, 244 N.C. App. 20, 25 (2015) (affirming there was good cause to renew the DVPO based on the trial court's findings regarding the plaintiff's continued fear of the defendant, where the defendant "continued to harass and threaten" the plaintiff even with the DVPO in effect); *see also Jabari v. Jabari*, 283 N.C. App. 513, 520–21 (2022) (affirming there was good cause to support the finding that the plaintiff "remains in fear of [the d]efendant" where, among other things, the defendant "had been stalking [her and the children]," and the defendant had been "charged with felony witness intimidation because he 'just was threatening' her").

Additionally, "[t]he plain language used by our legislature does not require a trial court to attempt to determine whether the plaintiff's actual subjective fear is objectively reasonable under the circumstances." *Brandon v. Brandon*, 132 N.C. App. 646, 655 (1999). The trial court must, however, make a finding that the trial court believes the plaintiff is in actual fear of the defendant to issue a DVPO. *Id.* at 654 (providing that "[a]lthough [the p]laintiff testified that she was afraid of [the d]efendant. . . the trial court made no finding regarding [the p]laintiff's subjective fear[,] and "[w]e therefore cannot know whether the trial court believed [the p]laintiff actually feared [the d]efendant[.]" Thus, "this conclusion cannot provide grounds for

issuance of the DVPO").

In *Forehand v. Forehand*, we affirmed the renewal of a DVPO for good cause, where the trial court found that "good cause" existed to renew the DVPO based on:

> (1) [the] defendant's emails with "vulgar and angry language"; (2) the fact that [the] "plaintiff continues to be in fear of the [defendant] due to his angry attitude — particularly surrounding custody issues"; (3) the "poor exchange" of the drug test results required in their Chapter 50 action which has "heighten[ed the] plaintiff's anxiety and fear"; (4) [the] defendant's past attempts to cause bodily injury to plaintiff in September 2012; (5) [the] defendant's past conduct that placed plaintiff in fear of imminent serious bodily injury; (6) the threats [the] defendant made while he was hospitalized at WakeMed hospital in September 2012; (7) [the] defendant's past threats to commit suicide and commitments based on his attempts to commit suicide; and (8) [the] defendant's past issues with drug use.

238 N.C. App. 270, 274 (2014). Upon review, we concluded that there was competent evidence in support of a finding of good cause, "based on [the] defendant's past conduct in addition to [the] plaintiff's continued fear of [the] defendant." *Id.* at 275.

*Forehand*, however, is different from this case in another important way. In *Forehand*, the trial court had issued the original DVPO with findings of fact and conclusions of law, but renewed the DVPO after making new findings of facts. We addressed this situation of *Forehand* in *Ponder*, explaining:

> In *Forehand*, the trial court made eight findings of fact supporting its conclusion that "good cause" existed to renew the original DVPO. This Court held the fact that the findings of fact to support renewal of the DVPO rested, in large part, on acts which also served as the basis for issuance of the original DVPO in the first place was

immaterial.

> The findings of fact in an original DVPO may provide the basis for "good cause" to renew the DVPO, but only if the trial court makes new findings of fact, at the time the renewal order is entered, to support its conclusion that the "good cause" to renew is based upon the findings in the original DVPO. [In *Ponder*,] the trial court incorporated by reference the original DVPO, but did not find as fact that these, or any other, acts which supported the original DVPO demonstrated "good cause" to renew the DVPO.

*Ponder*, 247 N.C. App. at 307.

Here, there were no findings of fact in the "original DVPO" that could provide "good cause" to renew the DVPO, nor was there any evidence which tended to support Plaintiff's allegations in the original complaint or in the motion to renew the DVPO. We first note that the trial court's Finding of Fact No. 6 is a quote of the allegations in the original complaint described as the "*relevant findings of fact* regarding danger to the minor child [G.M]" in the *ex parte* DVPO. The *allegations* quoted in Finding of Fact No. 6, however, were not binding findings of fact made by any trial court; these are a quote of Plaintiff's allegations in her original complaint. The *ex parte* DVPO issued on 12 April 2022 – before Defendant was served with the complaint and before any adversarial hearing – simply incorporated the allegations of Plaintiff's complaint.

To the extent the trial court relied upon these allegations as "relevant findings of fact," the trial court erred, and there was no evidence presented at the renewal hearing to support these allegations. In the Consent DVPO entered on 15 July 2022, the parties stipulated that "*no findings of fact* and conclusions of law will be included in this consent protective order."

N.C.G.S. § 50B-3(b1) allows entry of a DVPO with no findings of fact or conclusions of law, providing:

> A consent protective order may be entered pursuant to this Chapter without findings of fact and conclusions of law if the parties agree in writing that no findings of fact and conclusions of law will be included in the consent protective order. The consent protective order shall be valid and enforceable and shall have the same force and effect as a protective order entered with findings of fact and conclusions of law.

N.C.G.S. § 50B-3(b1) (2023).

Although the Consent DVPO was effective as a DVPO, it did not establish any facts as proven, and none of the evidence presented at the hearing on renewal supported these allegations. The allegations of the complaint seeking the DVPO, as incorporated into the *ex parte* DVPO, were not transformed into findings of fact by entry of the Consent DVPO where the DVPO was entered pursuant to N.C.G.S. § 50B-3(b1) with *no* findings of fact. *See* N.C.G.S. § 50B-3(b1). Therefore, Finding of Fact 6 is not supported by the evidence where the trial court made no new findings of fact. *See Ponder*, 247 N.C. App. at 307.

Finding of Fact No. 11 is also not supported by the evidence. Here, there is no competent evidence to support the finding that G.M. has a continued legitimate fear of Defendant regarding the need for a protective order against a violent offense. *See* N.C.G.S. § 50B-1. G.M. did not testify that she was afraid or in fear of Defendant for any of the reasons alleged in the original complaint for the *ex parte* DVPO or as repeated in the motion to renew the DVPO. There was no evidence of Defendant ever

recording G.M. The Johnston County DSS report was based solely on the allegations Plaintiff and G.M. stated to them, but ultimately there was no evidence whatsoever that Defendant had ever recorded G.M. in any inappropriate manner. Plaintiff had alleged Defendant had been recording G.M. "*on each of the child's weekly visits* from March 2022 since the child's date of birth"—a period of 13 years—and during this time, G.M was spending half of the time with Defendant, but multiple CPS and law enforcement investigations confirmed no such recording had occurred.

The only evidence introduced before the trial court that G.M. had any sort of continued "fear" was G.M.'s testimony that she was "afraid [Defendant is] going to convince me to come back or he's going to be sorry or something and do—he's best at manipulating[,]" and, after being directly asked about physical harm, that she was "[s]cared that he's going to get mad at me and—'cause why I did this, and I'm scared he's going to hurt me or something." Despite this testimony, G.M. later admitted she never recalled Defendant ever physically hurting her before.

G.M. was also fearful that Defendant would "listen in on my conversations on my technology and he would, like get in my business on the technology and stuff." Defendant acknowledged that he monitored G.M.'s computer and use of social media—as any responsible parent would for a thirteen-year-old child. Although appropriate parental monitoring of a child's use of her computer or cell phone may irritate the child or even make her fearful, this is simply not the type of "fear" that

can constitute "good cause" for a DVPO.[7]  Moreover, the trial court made no findings regarding its actual belief of G.M.'s fear of Defendant; the trial court only restated G.M.'s testimony, which is not enough to issue a DVPO.  *See Brandon*, 132 N.C. App. at 654 (holding there was not enough evidence to support the trial court's conclusion where it made findings of fact only as to the plaintiff's testimony of fear, but did not make any findings regarding the plaintiff's subjective fear).

Per the relevant law, delineated above, there was no "competent evidence" to show good cause to renew a DVPO, since: there was no Record evidence of violence by Defendant as to G.M., G.M. did not testify as to any actual fear of physical harm, and no findings were made regarding G.M.'s actual subjective fear of Defendant.  *See Real Time Resols.,* 293 N.C. App. at 635 (requiring competent evidence to support findings of fact); *see also* N.C.G.S. § 50B-1 (providing a DVPO is appropriate in situations where a person "attempt[s] to cause bodily injury, or intentionally caus[es] bodily injury[,]" or places one in "fear of imminent serious bodily injury or continued harassment"); *Brandon*, 132 N.C. App. at 654 (requiring findings of fact regarding the plaintiff's subjective fear).  G.M.'s vague testimony, without more, is not "adequate to support the finding" that she has a continued legitimate fear of Defendant, *see Real Time Resols.,* 293 N.C. App. at 635, and we accordingly reverse and vacate the trial court's order renewing the DVPO against Defendant.

## V. <u>Conclusion</u>

---

[7] We note that monitoring of use of electronic devices of an adult by another adult presents a very different situation than that of a *parent* supervising a minor child.

Upon review, we conclude the trial court's order renewing the DVPO against Defendant was not supported by competent evidence, as the Record evidence failed to demonstrate good cause, which is required for a showing of continued, legitimate fear on the part of G.M.  We therefore reverse the trial court's order.


REVERSED.

Judges GORE and STROUD concur.