An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-89

Filed 20 August 2025

Avery County, No. 24CVD000158

VICTORIA ASHLEY CONDREY, Plaintiff,

v.

DUSTIN TYLER WILLIAMS, Defendant.

Appeal by defendant from order entered 17 July 2024 by Judge Matthew J. Rupp in Avery County District Court. Heard in the Court of Appeals 31 July 2025.

> *Reeves Divenere & Wright, by Anné C. Wright, and Pisgah Legal Services, by Michael Puterbaugh, for Plaintiff-Appellee.*

> *Epperson Law Group, PLLC, by James L. Epperson and Lauren E. R. Watkins, for Defendant-Appellant.*

PER CURIAM.

Dustin Tyler Williams ("defendant") appeals from an order entered on 17 July 2024, granting Victoria Ashley Condrey ("plaintiff") a Domestic Violence Protective Order ("DVPO"). For the following reasons, we affirm.

I.     Background

On 11 July 2024, plaintiff filed a complaint and motion for a DVPO against defendant. **{R 3-5}** On 14 July 2024, at the DVPO hearing, plaintiff testified to two alleged incidents, both of which stemmed from custodial disagreements. The parties were in a relationship for approximately four years and have a four-month-old child ("minor child") together. **{T 5-6, 25-26}** They separated on 5 May 2024 and no longer lived in the same residence. **{T 6, 27, 46}** They had not established any custody arrangements. **{T 50}**

On the day of their separation, defendant, allegedly angry about something, entered plaintiff's home and took the parties' minor child and placed her in his car. **{T 6, 29}** Plaintiff threatened to call the police if he took the child. She went back inside her home and locked the door. **{T 7, 45}** Defendant testified that he had left his keys inside the house, but plaintiff would not let him inside and had locked the door. **{T 29-30}** Defendant put his shoulder forcefully into the door, breaking the latch, and entered the residence to retrieve his keys. **{T 7, 30}** Plaintiff testified that she was scared for her safety. **{T 6}** She told defendant to leave the premises, which he did. **{T 8}**

The second alleged incident was on 10 July 2024 after a doctor's appointment for their minor daughter. **{T 9}** Following the appointment, defendant took the child home. **{T 9, 38}** He had not gotten far, when he received a text from plaintiff that he had left the breast milk and to meet her at her father's house to retrieve it. **{T 10, 38-39}** Defendant testified that instead of simply handing him the milk, plaintiff

opened the side door to his car to kiss the minor child. **{T 39-40}** The parties began arguing over what time defendant would return the child that evening. **{T 10-11, 40-41}** Plaintiff testified that when they could not agree on the time, she began unbuckling the minor child's car seat. **{T 11}** Defendant claimed that he did not see her unlatch the car seat but saw plaintiff step back from the car and start waving her hands in the air in what he believed was an effort to get her father to escalate the situation. **{T 41}** Defendant testified to forcefully stepping on the gas, hoping the momentum would close the car door. **{T 41}** Plaintiff testified that the tire ran over her foot, and her arm got scraped from the car seat. **{T 11}** As the car door did not shut, defendant pulled over a moment later and closed the door. **{T48-49}**

The trial court granted the DVPO, finding that defendant's use of force to open the door and enter the residence was an act of domestic violence. **{R 18}** Further, the court found that plaintiff had been placed in fear of imminent serious bodily injury. **{R 18}** The court noted the significance that the parties had ended their romantic relationship on the day of the first incident and no longer lived together in the residence involved. **{T 52}** Finally, the trial court found that the minor child was not in danger of imminent serious bodily injury, and that defendant had not used a deadly weapon, namely the car, to harm plaintiff or his minor child. **{R 18}** Defendant timely appealed on 31 July 2024. **{R 23}**

## II.    <u>Discussion</u>

The standard of review on appeal regarding a DVPO, where a trial court sits without a jury, is whether there was competent evidence to support the findings of fact. *Hensey v. Hennessy*, 201 N.C. App. 56, 59, 685 S.E.2d 541, 544 (2009).

An entry of a DVPO requires the trial court to conclude "that an act of domestic violence has occurred," and this conclusion must be properly based on the findings of fact. *Kennedy v. Morgan*, 221 N.C. App. 219, 223, 726 S.E.2d 193, 196 (2012). N.C. Gen. Stat. § 50(B)-1(a) defines "domestic violence" in relevant part as:

> [T]he commission of one or more of the following acts upon an aggrieved party . . . by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
> . . . .
> (2) Placing the aggrieved party . . . in fear of imminent serious bodily injury . . . that rises to such a level as to inflict serious emotional distress.

Whether the party has been placed "in fear of imminent serious bodily injury" is a subjective test, not an "objective reasonableness test." *Brandon v. Brandon*, 132 N.C. App. 646, 654, 513 S.E.2d 589, 595 (1999). "Accordingly, where the trial court finds that a plaintiff is actually subjectively in fear of imminent serious bodily injury, an act of domestic violence has occurred." *Id*. at 654–55, 513 S.E.2d at 595.

In determining whether subjective fear is based on competent evidence, this Court gives great deference to the trial court's findings, as the trial judge is "present to see and hear the inflections, tone, and temperament of the witnesses, and . . . we are forced to review a cold record." *Id*. at 652, 513 S.E.2d at 594; *see also Jarrett v.*

*Jarrett*, 249 N.C. App. 269, 280, 790 S.E.2d 883, 890 (2016) ("[T]he trial court is in the best position to judge the credibility of the witness testimony[,] and our Court must give great deference to the trial court's determinations.").

Defendant argues that just because plaintiff may have been afraid does not necessarily mean there was an act of domestic abuse, citing *Kennedy*. We are unpersuaded. In *Kennedy*, the trial court found that the defendant had hired a private investigator which placed the plaintiff in apprehension. *Id*. This Court held that hiring a private investigator to conduct surveillance does not constitute an "act" by the defendant which places the plaintiff "in fear of . . . continued harassment" as required by N.C. Gen. Stat. § 50(B)-1(a)(2). *Id*. at 224, 726 S.E.2d at 196–97.

Here, defendant broke through a locked door and entered plaintiff's residence. This is supported by the testimony of both parties. The plain language of the statute does not ask whether defendant intended to place plaintiff in imminent fear of bodily harm or require proof of actual bodily harm. N.C. Gen. Stat. § 50(B)-1. It merely requires the aggrieved party to be placed in fear of imminent serious bodily harm based on the commission of an affirmative act. *Id*; *Brandon*, 132 N.C. App. at 654, 513 S.E.2d at 890.

The trial court found that this was an act of domestic violence by the defendant which could subjectively place plaintiff "in fear of imminent serious bodily injury" and "inflict serious substantial emotional distress." N.C. Gen. Stat. § 50(B)-1(a)(2). We agree. Plaintiff's testimony that she was afraid for her safety when defendant broke

open the front door and entered the residence constitutes competent evidence for this finding.   Thus, the trial court's conclusion that an act of domestic violence had occurred is properly based on the findings of fact.

### III.    Conclusion

Accordingly, we affirm.

AFFIRMED.

Panel consisting of Judges ARROWOOD, STADING, and MURRY.

Report per Rule 30(e).